**RAILCAR, LTD., Plaintiff,**

v.

**SOUTHERN ILLINOIS RAILCAR COMPANY, Defendant.**

**Civil Action No. 1:97–CV–3772–JTC.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 23, 1999.

Leticia D. Alfonso, Kevin R. Armbruster, Cushing Morris Armbruster & Jones, Atlanta, GA, for plaintiff.

William J. Holley, II, Parker Hudson Rainer & Dobbs, Atlanta, GA, Robert L. Jackstadt, Peper Martin Jensen Maichel & Hetlage, Belleville, IL, for defendant.

## ORDER

CAMP, District Judge.

This case is before the Court on Defendant Southern Illinois Railcar Company's Motion to Dismiss for Lack of Jurisdiction Over the Person, Improper Venue, and Failure to State a Claim Upon Which Relief May Be Granted [# 6–1]. Prior to considering the merits of Defendant's motion, the Court granted Plaintiff's request for discovery to develop fully the jurisdictional facts relating to Defendant's motion to dismiss. The Parties have completed this discovery and have submitted supplemental briefing on the motion to dismiss. Accordingly, Defendant's motion is now ripe for review.

## I. BACKGROUND

This case arises out of an alleged Letter Agreement between the Parties pursuant to which Defendant Southern Illinois Railcar Company ("SIRC") leased railcars from Plaintiff Railcar, Ltd. ("Railcar"). Plaintiff alleges that SIRC breached the Letter Agreement by wrongfully refusing to accept delivery of certain cars and by failing to make rental payments or payments for storage costs and switching fees allegedly incurred by Railcar as a result of this refusal to accept delivery.

Defendant SIRC is an Illinois corporation with its principal place of business in Illinois. The company contends that it has no property, offices, or employees in Georgia and that it does not transact business in the State. SIRC further contends that Plaintiff initiated the lease agreement between the Parties, which called for delivery of railcars to SIRC outside of Georgia, and that no representative of SIRC visited Georgia in connection with the performance of the Letter Agreement. As such SIRC claims that this Court may not assert personal jurisdiction over it in connection with Plaintiff's suit consistent with the requirements of the Due Process Clause of the United States Constitution.

## II. PERSONAL JURISDICTION

■■■ SIRC contends that it is not subject to personal jurisdiction in Georgia and that Railcar's Complaint against it must be dismissed. Plaintiff bears the burden of establishing jurisdiction in this Court. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 626 (11th Cir.1994). Where, as here, an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a *prima facie* case of jurisdiction to survive the motion to dismiss. *Id.; Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hospital,* 926 F.Supp. 1106, 1112 (N.D.Ga. 1996) (Hull, J.). Plaintiff may establish a *prima facie* case by presenting sufficient evidence to withstand a motion for directed verdict. *Id.* The Court construes the allegations in the Complaint as true to the extent that they are uncontroverted by Defendant's evidence. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). Where there are conflicts between the Parties' evidence, the Court makes all reasonable inferences in favor of Plaintiff. *Id.*

■■■ A court's exercise of personal jurisdiction over a party must comply with the requirements of the Due Process Clause of the United States Constitution. Due Process contemplates two types of jurisdiction over the person and a party may be subject to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A party is subject to general jurisdiction when it has "continuous and systematic" contacts with a forum. When a party's contacts with a particular forum meet this high threshold, the party may be haled into court in that forum on any claim. *Id.*

■■■ In contrast, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant only for purposes of claims arising out of that

defendant's contacts with the forum. The Court must conduct a two-part inquiry to determine whether a non-resident defendant may be haled into a particular forum to defend a lawsuit. First, the Court must look to the long arm statute of the forum in which it sits to determine whether the state intended to reach out and exercise personal jurisdiction over the non-resident defendant at issue. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir.1996). If the provisions of the long arm statute are satisfied, the Court must then determine whether the non-resident defendant has sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* If a state's long arm statute confers personal jurisdiction to the limits of Due Process, the Court may pass over analysis of the statute and exercise jurisdiction where the constitutional requirements are satisfied. *Allegiant*, 926 F.Supp. at 1112.

Plaintiff contends that the Court has both specific and general jurisdiction over SIRC in this case.[1] Therefore, the Court will address each type of jurisdiction in turn.

### A. Specific Jurisdiction

#### 1. Standard

Although there has been some disagreement as to whether the Georgia long arm statute extends to the maximum extent of due process for all claims, the Eleventh Circuit has found that the Georgia long arm statute does confer personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution for purposes of contract claims against nonresident defendants. *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir.1994). Accordingly, the Court will move directly to consideration

of whether the exercise of personal jurisdiction over SIRC is consistent with the Due Process Clause in this action based upon breach of contract.

A non-resident defendant may be subject to specific jurisdiction in a particular forum when (1) it has purposefully established minimum contacts with the forum state and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Francosteel*, 19 F.3d at 627. For purposes of specific jurisdiction, the non-resident defendant must "have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir.1996) (citations omitted).

 In order to fulfill the minimum contacts requirement, a plaintiff must demonstrate the presence of three factors. First, the plaintiff's cause of action must arise out of or relate to the non-resident defendant's contacts with the forum state. *Id.* Second, the contacts must show that the non-resident defendant purposefully availed itself of conducting activities within the forum state and invoked the benefits and protections of the forum's laws. *Id.* Third, the defendant's contacts must demonstrate that the non-resident should reasonably anticipate being haled into court in the forum. *Id.* In essence, "[t]he availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation." *Francosteel*, 19 F.3d at 627.

Once it has been established that a non-resident defendant has the requisite minimum contacts with the forum state, the Court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction "would comport with fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528

---

**1.** While Plaintiff fails to distinguish explicitly between general and specific jurisdiction in its briefs, it is clear that it seeks to assert both specific and general jurisdiction over SIRC through its reliance on SIRC's Georgia contacts that give rise to this suit as well as SIRC's contacts with Georgia that are entirely unrelated to the Parties' dispute.

(1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The other factors to be considered include "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental social policies." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir.1996) (citations omitted). Even where a non-resident defendant has sufficient minimum contacts with the forum, these factors may make the assertion of personal jurisdiction unreasonable in a particular case. *Id.* Conversely, these factors may make the assertion of personal jurisdiction reasonable on a lesser showing of minimum contacts. *Id.*

## 2. Analysis

To support an exercise of specific jurisdiction, Plaintiff relies on the negotiation and performance of the Letter Agreement that is the basis for this suit.[2] Although Plaintiff's cause of action does arise out of SIRC's contacts with Georgia through the Letter Agreement, the Court must still determine whether SIRC purposefully availed itself of the privilege of conducting activities within the forum by entering the agreement such that it should "reasonably anticipate being haled into" a Georgia court.

Plaintiff Railcar initiated the contact that led to the entry of the Letter Agreement in this case by inquiring of SIRC whether it would be interested in leasing railcars. The negotiations between the Parties took place through the mail and over the telephone between SIRC's offices in Illinois and Plaintiff's Georgia offices. Railcar sent the initial version of the Letter Agreement to SIRC's offices in Illinois

where the Letter Agreement was modified and executed. SIRC sent the Letter Agreement back to Railcar's Georgia offices.

The Letter Agreement provided for the delivery of railcars by Railcar to SIRC's customers in Illinois and other states outside of Georgia. While SIRC was obligated to send payments to Railcar in Georgia, the agreement did not contemplate any other activities within the State. The railcars leased to SIRC were repaired in Illinois before delivery to SIRC's customers.

Although there is no dispute that SIRC representatives did not visit Georgia during the negotiation or course of performance of the Letter Agreement, Plaintiff claims that SIRC representatives visited Georgia after the dispute between the Parties arose to negotiate an amended contract and to settle the Parties' disagreement. SIRC argues that this visit to Georgia cannot be used to support the exercise of personal jurisdiction as a matter of law and according to an agreement between the Parties because it was made solely for purposes of settlement negotiation.

As explained by the Supreme Court, a contract with an out-of-state resident is insufficient, standing alone, to establish minimum contacts in that out-of-state forum. *Burger King v. Rudzewicz*, 471 U.S. 462, 478–79, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Francosteel*, 19 F.3d at 627. In analyzing minimum contacts arising from a contractual relationship, a court must take

> a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and

---

**2.** While Plaintiff also raises SIRC's contacts with Georgia that are unrelated to the Letter Agreement, the lawsuit does not arise out of or relate to those contacts and they are not

relevant for purposes of the assertion of specific jurisdiction. They will be addressed below in the Court's discussion of general jurisdiction.

the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Francosteel,* 19 F.3d at 627–628 (quoting *Burger King v. Rudzewicz,* 471 U.S. at 478–79, 105 S.Ct. 2174). Therefore, an analysis of these realistic factors relating to the business relationship between Railcar and SIRC is necessary to determine whether SIRC established sufficient minimum contacts with Georgia to permit the exercise of personal jurisdiction.

### a. Initiation of Contact

■ In analyzing minimum contacts in the context of a business relationship between two parties, great weight is often placed on which party initiated the contact that led to the business relationship. *See Allegiant Physicians Serv., Inc. v. Sturdy Memorial Hospital,* 926 F.Supp. 1106, 1114 (N.D.Ga.1996) (Hull, J.). This is because "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." *Id.* (quoting *Francosteel,* 19 F.3d at 628). Therefore, courts in the Eleventh Circuit have found jurisdiction proper where a nonresident defendant reaches out and establishes contact with a Georgia resident. *Id.* In contrast, the courts in this circuit have found personal jurisdiction lacking where the Georgia plaintiff initiates contact with the out-of-state defendant. *Id.* at 1115 (citing cases).

■ It is undisputed that Railcar—the Plaintiff in this case—reached out to SIRC in Illinois to inquire into a possible leasing arrangement for its railcars. Similarly, Railcar sent the initial draft of the Letter Agreement to SIRC's Illinois offices for execution. This factor indicates that Defendant did not purposefully avail itself of the Georgia forum and mitigates against jurisdiction in this case.

### b. Negotiation of the Letter Agreement

The Parties negotiated the Letter Agreement primarily by telephone and mail between SIRC's Illinois office and Railcar's Georgia office. It is undisputed that no representative of SIRC visited Georgia during the negotiations. The Letter Agreement was drafted by representatives of Railcar and was sent to SIRC in Illinois for review and execution. SIRC amended the Letter Agreement and executed it before sending it back to Railcar in Georgia.

The absence of SIRC's physical presence in Georgia during the negotiations does not alone defeat personal jurisdiction. *See Burger King v. Rudzewicz,* 471 U.S. at 476, 105 S.Ct. 2174 ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original). While physical presence is not necessarily required for the constitutional assertion of jurisdiction, however, physical presence is relevant to the non-resident defendant's purposeful direction of his activities toward the forum and the foreseeability of his being haled into court there. *See Allegiant,* 926 F.Supp. at 1116 (finding that physical presence "remains a relevant factor"). Therefore, the absence of SIRC representatives in Georgia during the negotiation of the Letter Agreement is one factor weighing against SIRC's purposeful availment of the Georgia forum in this case. In addition, SIRC's phone and mail communications with Railcar in Georgia during the negotiation of the agreement do not show that SIRC purposefully directed its activities toward Georgia. *Id.*

### c. Focus of the Agreement

As emphasized by the Supreme Court, it is also important to look at the realities of the business relationship created by an agreement in determining whether that agreement established contacts with a forum sufficient to support personal jurisdiction. *Burger King,* 471 U.S. at 479, 105

S.Ct. 2174. The Parties' actual course of dealing throughout the performance of the contract and the subject matter of the agreement demonstrate that SIRC did not purposefully direct its activities toward the Georgia forum by entering the Letter Agreement.

Pursuant to the Letter Agreement, Railcar agreed to provide railcars to SIRC customers in Illinois and other states outside Georgia.[3] While SIRC was required to communicate with Railcar in Georgia regarding the agreement and was required to send payments to Railcar in Georgia, these factors do not weigh in favor of jurisdiction. Regular phone and mail communications, including the mailing of payments, have been found insufficient to show that a party purposefully availed itself of the Georgia forum. *Id.* at 1116.

Further, the Letter Agreement between the Parties did not contemplate or establish a continuing relationship with Railcar in Georgia or long term connections to the forum state. In *Burger King v. Rudzewicz,* 471 U.S. 462, 479–80, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the Supreme Court held that a "carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in Florida" justified jurisdiction over the defendant in Florida. In that case, the defendant was a franchisee of the plaintiff's business that had voluntarily accepted "long term and exacting regulation" of every aspect of its Michigan operations by the plaintiff in Florida. *Id.* at 480, 105 S.Ct. 2174.

In contrast, the Letter Agreement in this case provided for the lease of a approximately 337 railcars over a limited time period.[4] Therefore, the relationship was discrete in time and scope. Unlike the defendant in *Burger King,* SIRC did not agree to any oversight of its operation by the Georgia entity, let alone the exten-

sive and pervasive oversight found in that case. Instead, SIRC agreed to lease a limited number of railcars for use by its customers. Accordingly, the discrete relationship established by the Letter Agreement did not involve the long-term and exacting relationship found in *Burger King. See also Allegiant,* 926 F.Supp. at 1117 (outsourcing of entire anesthesiology operation to Georgia entity did not contemplate long-term and exacting relationship required for personal jurisdiction). The nature and focus of the agreement, therefore, does not show the purposeful availment of the Georgia forum necessary to support jurisdiction over SIRC.

### d. SIRC Representatives' Visit to Georgia

Plaintiff also argues that a meeting between SIRC and Railcar representatives in Atlanta on May 28, 1997 "for the purpose of negotiating amendments and resolving some of the disputed issues pertaining to the Lease Agreement" demonstrates SIRC's purposeful availment of the Georgia forum. SIRC argues that this meeting was conducted solely for the purpose of settling Railcar's claims against SIRC under the Letter Agreement and that it does not show the minimum contacts between SIRC and Georgia to support an exercise of jurisdiction in this case. Further, SIRC attaches evidence showing that the Parties specifically agreed prior to the meeting that "in the event of litigation, neither Southern Illinois Railcar Company nor Railcar, Ltd. will raise to the Court or jury the fact that this meeting took place or any of the settlement negotiations which may be discussed by either party during the meeting." (Exhibit A to Jackstadt Affidavit). Therefore, SIRC argues that Railcar's reliance on this meeting to support jurisdiction is in direct breach of the

---

3. While the Letter Agreement itself does not reveal the location of SIRC customers upon taking delivery of the cars, Defendant's evidence with respect to the location of delivery outside of Georgia is uncontroverted by Plaintiff.

4. The base lease period provided for by the terms of the Letter Agreement is three years.

agreement reached by the Parties and that the fact of the meeting should not be considered in analyzing its contacts with the forum. Plaintiff has not refuted SIRC's evidence that this meeting was held for purposes of settlement but argues that substantive issues regarding an amended agreement were raised by Railcar and discussed by the Parties at the meeting. No amended agreement was reached.

■ SIRC's trip to Atlanta for these purposes, however, does not alter the focus of the agreement and the "realities" of the contractual arrangement between SIRC and Railcar. The fact remains that the agreement between the Parties contemplated the delivery of railcars to SIRC's customers outside of Georgia and that the only continuing contact with the forum contemplated by the agreement was the mailing of payments and other correspondence into Georgia, as well as telephone communications between the Parties regarding the leasing arrangement. That Railcar invited SIRC into the forum to resolve their dispute does not alter the fact that Railcar originally initiated the contact with the non-resident which led to the Letter Agreement. A single visit to the forum to discuss possible litigation between the Parties does not give rise to the ongoing relationship with the forum contemplated by the Supreme Court in *Burger King.*

Plaintiff relies on the Eleventh Circuit's decision in *Complete Concepts, Ltd. v. General Handbag Corp.,* 880 F.2d 382 (11th Cir.1989) to support jurisdiction based upon this visit. Plaintiff argues that, like SIRC in this case, the defendant had no physical ties to Georgia other than a single trip to the plaintiff's Georgia factory to negotiate over important matters at the heart of the deal between the parties. Rather than supporting Plaintiff's assertion that jurisdiction is proper in this case,

however, the holding in *Complete Concepts* demonstrates the absence of jurisdiction here.

In *Complete Concepts,* a Georgia plaintiff sued a Florida defendant after the deterioration of their agreement for the manufacture and sale of handbags. Unlike SIRC in this case, the Florida defendant initiated the contact with the Georgia plaintiff that led to their agreement. The agreement in that case contemplated a joint enterprise between the parties whereby the Georgia plaintiff would provide designs for handbags that the Florida defendant manufactured in Florida. The Georgia plaintiff was responsible for marketing and selling the handbags to customers after their manufacture in Florida. Therefore, the parties had an ongoing relationship that contemplated activities in both Florida and Georgia. While the Florida defendant's trip to Georgia to negotiate the arrangement was one factor in determining purposeful availment in that case, it was the defendant's initiation of contact with the Georgia plaintiff and the ongoing and joint nature of the enterprise that supported the exercise of jurisdiction.[5]

In contrast, SIRC in this case entered a lease of limited duration for railcars to be delivered outside of Georgia after Georgia Plaintiff Railcar solicited the lease. The fact of SIRC's single visit to Georgia only after a dispute arose under the contract does not change the limited nature of the agreement between the Parties or demonstrate a nexus to Georgia sufficient to support personal jurisdiction.

Further, the Parties specifically agreed that the visit to Georgia would not be used in litigation for any purpose. To find now that this visit forms the basis for jurisdiction in the face of the Parties' express agreement otherwise would encourage gamesmanship and discourage nonresi- ·

---

**5.** In addition, the Eleventh Circuit emphasized the importance of the timing of the visit to Georgia in *Complete Concepts* at the culmination of the negotiations between the parties and immediately prior to reaching a final agreement. In this case, the single visit to Georgia occurred long after the Letter Agreement was negotiated and only after a dispute arose between the Parties under the agreement.

dents from entering a forum in good faith to settle a dispute. *See Great Dane Trailers, Inc. v. Gelco Rail Serv.*, No. CV–484–132, slip op. p. 17 (S.D.Ga.1984) (Edenfield, J.) (noting the policy behind immunity from service for corporations entering a foreign forum for settlement negotiations). In addition, the agreement between the Parties that the visit would not be used in litigation also demonstrates that SIRC did not reasonably anticipate being haled into a Georgia court based upon this connection with the forum. For these additional reasons, SIRC's single visit to Georgia in 1997 cannot form the basis for personal jurisdiction over it.

### B. General Jurisdiction

In addition to arguing that SIRC's contacts with Georgia that arise out of the Letter Agreement give rise to personal jurisdiction in this case, Railcar argues that SIRC has numerous Georgia contacts that are unrelated to the transaction at issue that are sufficient to support an exercise of jurisdiction in this case. A court may exercise personal jurisdiction over a party based upon contacts unrelated to the dispute at issue only if those contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

It is undisputed that SIRC is an Illinois corporation with its principal place of business located in Troy, Illinois. SIRC does not own any real estate or have any offices, employees or operations in Georgia. SIRC is not registered to do business with the State of Georgia and does not advertise in the State. Nonetheless, Plaintiff argues that SIRC's contacts with the forum support the exercise of jurisdiction.

### 1. Unrelated Activities in Georgia

In support of jurisdiction, Railcar relies upon contacts that SIRC has with Georgia that are unrelated to the Letter Agreement and lease arrangement at issue in this case. Railcar contends that SIRC appointed Railcar as its agent to negotiate two previous contracts in Georgia which were substantially performed within the State. Railcar claims that all the negotiations for these contracts took place in Georgia and that approximately 70 railcars owned or leased by SIRC transported goods in the State of Georgia pursuant to the agreements.

Railcar also argues that other railcars owned or leased by SIRC have transported goods in interstate commerce on railroads located in Georgia and that SIRC has used a Georgia maintenance facility for its railcars. In addition, Railcar contends that SIRC has one established customer in Georgia from which SIRC derives income and that SIRC has purchased labor, materials, and services within the State totaling $500,000.00 in the last three years. Finally, Railcar claims that SIRC employees have corresponded with Georgia entities by both phone and mail and have traveled to Georgia to meet with customers.

SIRC does not dispute that it has contacts with the Georgia forum, but argues that these contacts are random and sporadic and not of the systematic nature required for general jurisdiction. Because SIRC operates in the interstate railcar industry, it argues that it is inevitable that its cars and business will cross many state lines and enter numerous forums. While SIRC acknowledges that these activities may give rise to specific jurisdiction in incidents arising out of those contacts, it contends that the exercise of general jurisdiction could not be exercised based upon its random and fortuitous contacts with several states in interstate commerce. Further, SIRC explains that it has little control over the destinations and routes taken by its railcars leased by customers. It is the lessees and not SIRC that direct the travel of the cars.

Finally, SIRC demonstrates that less than 5% of the car wheel miles traveled by SIRC owned railcars in each of the last three years was traveled in Georgia. Of the total amount SIRC has spent for capital and running repairs in the last three years, only 0.24% was spent on mainte-

nance in Georgia. SIRC also shows that its relationship with its customer in Georgia is sporadic and that the customer leases railcars to be used throughout the United States. SIRC has no control over where the cars are used and its customer makes payment to a Maryland bank on the lease. SIRC also provides evidence that its business with Georgia customers represents a small fraction of its overall business in the United States.

In *Helicopteros*, plaintiffs sued Helicol, a Colombian helicopter transportation company, in Texas state court for the wrongful death of certain United States citizens killed in a helicopter crash in Peru. *Helicopteros*, 466 U.S. at 410, 104 S.Ct. 1868. The Colombian company challenged personal jurisdiction in Texas. Because the wrongful death suit did not arise out of the Colombian company's contacts with Texas, the Supreme Court analyzed whether the company had the "continuous and systematic" contacts with the State sufficient to support the exercise of general jurisdiction in Texas.

At the time of the crash, Helicol had been transporting employees of a Peruvian consortium who were working on a pipeline in Peru. *Id.* Because the consortium needed helicopters to move personnel and materials, it contacted Helicol about transportation services. Helicol's CEO traveled to Texas to meet with representatives of the consortium and negotiated the terms of the transportation arrangement. *Id.* The parties agreed on terms and began performance, although the agreement was formally signed later in Peru. Helicol received over $5 million in payments from the consortium drawn on a Houston, Texas bank. *Id.* at 411, 104 S.Ct. 1868.

Apart from the negotiation of the transportation contract, Helicol had other contacts with Texas. Over a seven year period, Helicol purchased 80% of its helicopter fleet and spare parts and accessories for over $4 million from a company in Fort Worth, Texas. *Id.* During that period, Helicol sent pilots to Fort Worth for training and to return the aircraft to South America. Helicol also sent management and maintenance personnel to Fort Worth for technical consultation. Helicol had never been authorized to do business in Texas and had never performed helicopter transportation services there. *Id.* The company never maintained an office or employees in Texas and never owned any real property in the State.

The Supreme Court found that these contacts were random and fortuitous and did not rise to the "continuous and systematic" level necessary for the assertion of general jurisdiction. The isolated visit by Helicol's CEO to negotiate the transportation contract could not be characterized as systematic and the fact that payments to Helicol were drawn on a Texas bank represented the "unilateral activity of another party" and was of "little consequence to the payee." *Id.* at 416–17, 104 S.Ct. 1868. Therefore, these factors could not support jurisdiction. While the court below had found the extensive purchases and visits to Texas for training persuasive, the Supreme Court clarified that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a non-resident corporation in a cause of action not related to the purchase transactions." *Id.* at 418, 104 S.Ct. 1868. The Court found that the protracted training sessions in Texas were "part of the package of goods and services" purchased by Helicol and that the brief presence of its employees in Texas for this purpose did not show the continuous and systematic contact with Texas necessary to permit the company to be sued there on any claim. *Id.*

In this case, SIRC's contacts with Georgia are far more attenuated than the contacts of Helicol that were found insufficient for general jurisdiction in *Helicopteros*. Far from showing a seven year relationship with a Georgia company requiring the regular travel of employees into the forum, Railcar relies upon three contractual arrangements with Georgia entities, the

focus of which had little connection to the forum. Unlike Helicol that purchased 80% of its fleet from Texas, SIRC has had less than 5% of its railcar travel in Georgia in the past three years and has business connections with Georgia that represent a small fraction of its overall business. Further, SIRC has little or no control over the destination and travel of its leased railcars that find their way into Georgia. Similar to Helicol, SIRC has no offices or employees in Georgia and has never been registered to do business in the State. Based upon the Supreme Court's rejection of general jurisdiction in *Helicopteros*, the assertion of general jurisdiction over SIRC in Georgia based upon its limited and random contacts with the forum is inappropriate. *See also Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 (5th Cir.1990) (finding that 47 calls at Louisiana ports by ships managed by the defendant company were insufficient to support general jurisdiction where the company was not licensed to do business in Louisiana, did not own property or employ personnel within the State, and "lacked control over where the vessels would make port.").

### 2. Ad Valorem Taxes

In addition to the unrelated contacts discussed above, Plaintiff has produced evidence demonstrating that SIRC pays ad valorem taxes to the State of Georgia based upon the railcars it owns that transport items in the State. Plaintiff argues that this payment of ad valorem taxes establishes personal jurisdiction a *fortiori* because the requirements of due process must be satisfied before a state can tax a non-resident entity. Plaintiff contends that the Supreme Court has made it clear that the due process requirements for tax jurisdiction are the same as for in personam jurisdiction and that SIRC's payment of ad valorem taxes to Georgia establishes personal jurisdiction.

■■■■ The Due Process Clause requires "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax." *Quill Corp. v. North Dakota*, 504

U.S. 298, 306, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (citing *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45, 74 S.Ct. 535, 98 L.Ed. 744 (1954)). The same purposeful availment and minimum contacts necessary for a forum to assert personal jurisdiction over a non-resident are also required for that forum to assess taxes against a non-resident. *Id.* at 307, 112 S.Ct. 1904. Therefore, it is not necessary that a party be present in a state in order for that state to assess taxes so long as the out of state party has purposefully availed itself of the benefits of the forum. *Id.*

In *Quill*, the Supreme Court found that a mail order business with over 3,000 customers in North Dakota that had derived over $1 million in revenue from the state in one year had sufficient minimum contacts with North Dakota to require it to collect use tax on its sales within the State consistent with the requirements of the Due Process Clause. *Id.* at 308, 112 S.Ct. 1904. Therefore, the Court engaged in an analysis of specific jurisdiction to determine whether due process permitted taxation arising out of the entity's contacts with the forum.

■■■■ Plaintiff in this case relies on *Quill* to argue that Defendant's payment of ad valorem tax to Georgia supports the exercise of personal jurisdiction in this unrelated case. Plaintiff contends that because SIRC pays ad valorem taxes due to the travel of its railcars in the State of Georgia, it must have sufficient minimum contacts for the exercise of general jurisdiction in this case. While SIRC may very well have sufficient minimum contacts with Georgia through the travel of its railcars in the State to support specific jurisdiction to assess an ad valorem tax, nothing in the Supreme Court's due process analysis in *Quill* suggests that a state must have general jurisdiction over an entity for all purposes in order to tax that entity. The dispute between the Parties in this case is unrelated to the travel of the railcars in Georgia and the ad valorem taxes paid by SIRC and a finding that these contacts

automatically authorize jurisdiction in this case would be to eviscerate the distinction between general and specific jurisdiction.

Further, "[i]t is essential to the validity of [an ad valorem property tax], under the due process clause, that the property shall be within the territorial jurisdiction of the taxing state." *Marion v. Floyd County Board of Equalization*, 270 Ga. 475, 511 S.E.2d 512(Ga.1999) (quoting *Wheeling Steel Corp. v. Fox*, 298 U.S. 193, 208, 56 S.Ct. 773, 80 L.Ed. 1143 (1936)). Therefore, it is the tax situs of the property to be taxed that is critical for purposes of due process and ad valorem taxes. While SIRC's ownership of railcars used to transport goods in Georgia that gives rise to the ad valorem tax is one factor to be analyzed in assessing its contacts with Georgia for purposes of personal jurisdiction in this case, the payment of ad valorem taxes does not a *fortiori* establish the continuous and systematic contacts with Georgia necessary to establish general jurisdiction as argued by Plaintiff. *See Leonard v. USA Petroleum Corp.*, 829 F.Supp. 882, 891 (S.D.Tex.1993) ("Texas cannot acquire jurisdiction over a corporation by taxing it for remote activities in interstate commerce.").

As discussed above, SIRC's ownership of railcars that travel through Georgia in interstate commerce does not show the continuous and systematic contacts with Georgia necessary for the assertion of general jurisdiction. Similarly, SIRC's payment of ad valorem taxes to the State based upon that same travel does not show the level of connection to the forum necessary to support general jurisdiction.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss [# 6-1] is **GRANTED** due to the absence of personal jurisdiction over Defendant SIRC. Accordingly, the case shall be **DISMISSED.**