PAUL, HASTINGS, JANOFSKY & WALKER, LLP, Plaintiff,

v.

CITY OF TULSA, OKLAMOMA, a municipal corporation, Defendant.

No. CIV.A.1:02–CV1038BBM.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 3, 2002.

Randy C. Gepp, Hollowell Foster & Gepp, Atlanta, GA, for Paul, Hastings, Janofsky & Walker LLP'S, plaintiff.

Michael J. Bowers, Thomas Joshua Archer, Christopher Scott Anulewicz, Meadows Ichter & Bowers, Atlanta, GA, Joel L. Wohlgemuth, phv, Chris L. Abernathy, phv, Norman Wohlgemuth Chandler & Dowdell, Tulsa, OK, for City of Tulsa, Oklahoma, a municipal corporation, defendant.

### ORDER

MARTIN, District Judge.

This case, alleging breach of contract for nonpayment of legal fees, is before the court on the City of Tulsa's motion to dismiss for lack of personal jurisdiction and improper venue [Doc. No. 8–1]. In the alternative, the City of Tulsa seeks a transfer of venue to the Northern District of Oklahoma [Doc. No. 8–2].

### I. *Factual and Procedural Background*

This lawsuit arises out of a legal services contract between the defendant, the City of Tulsa, Oklahoma ("Tulsa" or "the City"), and the plaintiff, the Atlanta office of Paul, Hastings, Janofsky and Walker ("Paul Hastings"). In 1994, the City of Tulsa was sued for race discrimination in a class action lawsuit in the United States District Court for the Northern District of Oklahoma. After three years of litigation, Tulsa contacted the Atlanta office of Paul

Hastings to determine if the law firm could assist the City Attorney in connection with the discrimination lawsuit. On April 30, 1998, the parties solidified an agreement, and Tulsa hired Paul Hastings as co-counsel in the Oklahoma lawsuit.

The contract between Paul Hastings and Tulsa delineated specific tasks that Paul Hastings was to perform. Namely, Paul Hastings was to retain experts, prepare pleadings, and assist in discovery. The parties amended this agreement six times during the course of the representation, each time leaving the task provisions the same, but increasing the amount of fees Paul Hastings was permitted to incur.

Over the course of the four-year relationship between the parties, Paul Hastings had continuous contact with the City and performed a variety of functions. The City sent at least one hundred letters and e-mail messages to employees of Paul Hastings' Atlanta office. These communications included payments and contract amendments. Paul Hastings also maintained the only complete set of court filings and correspondence with opposing counsel in the Atlanta office. Additionally, Paul Hastings complied with Tulsa's directive to hire Atlanta-based contract attorneys and paralegals to aid in the Oklahoma litigation. Although the Paul Hastings attorneys performed the vast majority of the work for the Tulsa litigation in the Atlanta office, they traveled to Tulsa on a variety of occasions in connection with the lawsuit. Tulsa officials visited Atlanta on one occasion. This visit occurred five months after the representation contract was signed. At that point, two City Attorneys traveled to Atlanta for a demonstration of Paul Hastings' computer and technological capabilities.

The relationship between the parties proceeded smoothly until August, 2001, when Tulsa discontinued payment for Paul Hastings' services. Based on assurances that Tulsa simply needed time to work out budgetary problems, Paul Hastings continued representation until January, 2002. Having not received payment, Paul Hastings withdrew from the litigation.

On April 19, 2002, Paul Hastings filed suit in this court asserting breach of contract and other related theories to recover its fees and expenses in connection with the Tulsa litigation. Tulsa responded with a motion to dismiss for lack of personal jurisdiction and improper venue. In the alternative, Tulsa seeks a transfer of venue to the Northern District of Oklahoma. Tulsa claims that it has insufficient contacts with the State of Georgia to justify litigation in this forum.

In order to facilitate a ruling on Tulsa's motion, the parties agreed to engage in limited discovery related to the jurisdictional issue. Based on five interrogatories and one request for production, Paul Hastings uncovered various connections between Tulsa and the State of Georgia. First, Tulsa spent millions of dollars in Georgia for goods and services over the past seven years. Second, Tulsa sent a variety of employees to Atlanta for official business trips. Tulsa also collected taxes from Georgia residents and corporations. Finally, Tulsa contracted with agencies in the Atlanta area to advertise its city in different magazines.

With this discovery completed, the parties are ready for the court to rule on Tulsa's motion. The court now considers Tulsa's motion to dismiss for lack of personal jurisdiction and improper venue, or alternatively, to transfer venue to the Northern District of Oklahoma.

II. *Motion to Dismiss for Lack of Personal Jurisdiction*

A. *Legal Standard*

■ Defendant Tulsa contends that it is not subject to personal jurisdiction in

Georgia and that Paul Hastings' claim against it for breach of contract must be dismissed. Paul Hastings, as plaintiff, bears the burden of establishing jurisdiction in this court. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 626 (11th Cir. 1994). Where, as here, an evidentiary hearing is not held on a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish a *prima facie* case of jurisdiction to survive a motion to dismiss. *Id.; Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp.,* 926 F.Supp. 1106, 1112 (N.D.Ga.1996) (Hull, J.). Paul Hastings may establish a *prima facie* case by presenting sufficient evidence to withstand a motion for a directed verdict. *Francosteel,* 19 F.3d at 626. The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988). Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff. *Id.*

■ In the Eleventh Circuit, a determination of personal jurisdiction requires consideration of both the Georgia long-arm statute and the Due Process Clause of the United States Constitution. *Nippon Credit Bank Ltd. v. Matthews,* 291 F.3d 738, 746 (11th Cir.2002); *Robinson v. Giarmarco & Bill,* 74 F.3d 253, 256 (11th Cir.1996). For diversity actions, a federal court has personal jurisdiction over a nonresident defendant only to the extent permitted by the forum state's long-arm statute. *Nippon Credit Bank,* 291 F.3d at 746. Although there has been some disagreement as to whether the Georgia long-arm statute extends to the maximum extent of due process for all claims, the most recent case promulgated by the Eleventh Circuit on personal jurisdiction affirms that the Georgia long-arm statute confers jurisdiction to the "maximum extent permitted by due process." *Nippon Credit Bank,* 291 F.3d

at 746; *see also Francosteel,* 19 F.3d at 627. Accordingly, the court proceeds directly to consideration of whether the exercise of personal jurisdiction over the City of Tulsa is consistent with the Due Process Clause of the United States Constitution. *See, e.g., Peridyne Tech. Solutions v. Matheson Fast Freight, Inc.,* 117 F.Supp.2d 1366 (N.D.Ga.2000) (Pannell, J.); *Maxwell Chase Techs. v. KMB Produce, Inc.,* 79 F.Supp.2d 1364 (N.D.Ga. 1999) (Camp, J.).

## B. *General Jurisdiction Over the City of Tulsa*

Tulsa argues that the City's contacts with the State of Georgia are insufficient to subject it to general jurisdiction in Georgia, and thus, it violates due process to expose it to such jurisdiction. On the contrary, Paul Hastings submits that the regular purchase of goods and services from Georgia vendors, the collection of taxes from Georgia residents, the visits to Georgia by Tulsa employees, and the Tulsa advertisements placed in magazines by Georgia-based agencies are adequate to expose Tulsa to general jurisdiction on any claim in Georgia courts.

■ Due process contemplates two types of jurisdiction over the person: general and specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A party is subject to general jurisdiction only when it has "continuous and systematic" contacts with the forum state. *Id.* This enables a plaintiff to hale the defendant into court in that forum on any claim, even if the contacts with the state are unrelated to the cause of action. *Id.* But, the "due process requirements for general personal jurisdiction are more stringent than for specific jurisdiction." *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1292 (11th Cir.2000). Accordingly, the

nonresident's "contacts with the forum that are unrelated to the litigation must be substantial" to warrant the exercise of general jurisdiction. *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1274 (11th Cir.2002); *Consol. Dev.,* 216 F.3d at 1292.

In analyzing the extent of Tulsa's contacts with the State of Georgia, the Supreme Court's decision in *Helicopteros Nacionales de Colombia v. Hall* is determinative. 466 U.S. at 408, 104 S.Ct. 1868. In *Helicopteros,* plaintiffs sued a Colombian helicopter transportation company in Texas state court for the wrongful death of United States citizens killed in a crash in Peru. *Id.* at 410, 104 S.Ct. 1868. The Colombian company challenged personal jurisdiction in Texas. *Id.* Because the wrongful death suit did not arise out of the Colombian company's contacts with Texas, the Supreme Court analyzed whether the company had "systematic and continuous" contacts with the state sufficient to support the exercise of general jurisdiction in Texas. *Id.*

The Court identified four contacts with Texas: (1) the defendant's chief executive officer flew to Houston to negotiate a transportation contract; (2) the defendant purchased most of its helicopters over a period of years from a company in Texas; (3) the defendant sent prospective pilots and management personnel to Texas for training; and (4) some checks given to the defendant were drawn on a Texas bank. *Id.* at 411, 104 S.Ct. 1868. The Court concluded that these contacts did not constitute continuous and systematic activity in Texas. *Id.* at 416, 104 S.Ct. 1868. The single visit by the chief executive officer was dismissed as sporadic, and the Court viewed the acceptance of checks drawn on a Texas bank to be "of little consequence" because the origin of the check was not a choice made by the defendant. *Id.* at 417, 104 S.Ct. 1868. Thus, the Court found that the "unilateral activity of another par-

ty . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.* at 417–18, 104 S.Ct. 1868.

More importantly, though, the Court rejected the view of the lower court and held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action unrelated to the purchase transactions." *Id.* at 418, 104 S.Ct. 1868. Further, the Court analogized the training trips of employees and management personnel to the purchase of goods and services. *Id.* As such, the brief presence of employees in Texas for the purpose of attending the training sessions did not amount to the systematic and continuous contact with Texas necessary to sustain general jurisdiction. *Id.*

█ The Supreme Court's holding in *Helicopteros* prevents this court from finding Tulsa had sufficient contacts to sustain general jurisdiction in Georgia courts. Like the Texas purchases made by the Colombian company in *Helicopteros,* Tulsa's purchases from the State of Georgia cannot warrant general jurisdiction because they are unrelated to Paul Hastings' cause of action. Similarly, Tulsa's agreements with Georgia-based agencies to advertise in magazines do not show a connection to the forum sufficient to justify general jurisdiction since the magazines were primarily distributed in European countries. Accordingly, "even if occurring at regular intervals," these "mere purchases" do not justify general jurisdiction. *Id.* at 418, 104 S.Ct. 1868.

Moreover, the Supreme Court in *Helicopteros* concluded that the "brief presence of [the Colombian company's] employees in Texas" was not a "significant contact." *Id.* at 418, 104 S.Ct. 1868. This

conclusion means that Tulsa employee trips to Georgia cannot be a contact significant enough to warrant general jurisdiction. Finally, the taxation of Georgia residents cannot sustain general jurisdiction in Georgia. Like the drawee bank in *Helicopteros,* the primary residence of people who choose to own property in Tulsa is not within Tulsa's control. Such "unilateral activity of another party ... is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Id.* at 417, 104 S.Ct. 1868.

Therefore, based on the Supreme Court's reasoning in *Helicopteros,* this court cannot exercise general personal jurisdiction over the City of Tulsa. The asserted contacts are simply not "continuous and systematic" enough to sustain general jurisdiction in Georgia over Tulsa for any cause of action. *See Nippon Credit Bank,* 291 F.3d at 738 (finding general jurisdiction where defendant corporation owned property in Georgia, regularly transacted business within Georgia, maintained Georgia address and telephone numbers, utilized a Georgia bank account, and hired various employees in Georgia); *Consol. Dev.,* 216 F.3d at 1286 (finding no general jurisdiction where foreign corporation issued bonds, appointed an agent for service of process, and marketed products through a subsidiary in the United States); *Johnston v. Basil,* 802 F.2d 418 (11th Cir.1986) (finding no general jurisdiction in Georgia where Alabama resident hired Georgia resident to perform work outside of Georgia); *Railcar, Ltd. v. S. Ill. Railcar Co.,* 42 F.Supp.2d 1369 (N.D.Ga.1999) (Camp, J.) (finding that nonresident company having one Georgia customer, using Georgia maintenance facilities, buying products from Georgia vendors, traveling to Georgia to meet with customers, and talking on the phone with Georgia entities did not have

sufficient contacts with Georgia to establish general personal jurisdiction).

### C. Specific Jurisdiction Over the City of Tulsa

The next issue is whether this court may exercise specific jurisdiction over Tulsa for the purpose of deciding this particular case. Tulsa argues that its contacts with Georgia cannot sustain a finding of specific jurisdiction, and it would be unreasonable to force Tulsa to litigate in this court. In contrast, Paul Hastings argues that exercising jurisdiction over Tulsa in this case comports with all requirements of the Due Process Clause of the United States Constitution.

#### 1. Minimum Contacts

■■■■ Even when not subject to general jurisdiction, a nonresident defendant may be subject to specific jurisdiction in a state when: (1) it has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Francosteel,* 19 F.3d at 627; *Delong Equip. Co. v. Wash. Mills Abrasive Co.,* 840 F.2d 843, 853–54 (11th Cir.1988). To fulfill the first requirement, the plaintiff must demonstrate the existence of three factors. *Vermeulen v. Renault, U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993). First, the plaintiff's cause of action must arise out of, or relate to, the nonresident defendant's contacts with the forum state. *Id.* Second, the contacts must show that the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state. *Id.* Third, the defendant's contacts must demonstrate that the nonresident could reasonably anticipate being haled into court in the fo-

rum. *Id.* In essence, the "availability of specific jurisdiction depends on the relationship among the defendant, the forum, and the litigation." *Francosteel,* 19 F.3d at 627.

Based on this analytical framework, the court must determine if Tulsa purposefully established minimum contacts with Georgia. Applying the three-part minimum contacts test, this court must first decide if Tulsa's contacts with Georgia are related to Paul Hastings' cause of action. The court finds this factor easily satisfied. Tulsa entered a contract with Paul Hastings' Atlanta office to assist in Tulsa's class action suit. According to this contract, Paul Hastings was to perform certain tasks, and Tulsa was to pay for Paul Hastings' services. When Tulsa refused to pay for Paul Hastings' services, Paul Hastings withdrew from representation and filed suit for breach of contract. Thus, the court finds the first prong of the minimum contacts test satisfied because the contacts that exist between Tulsa and Georgia provide the basis for this lawsuit. *See, e.g., Allegiant Physicians Servs.,* 926 F.Supp. at 1114 (finding the first prong of the minimum contacts test easily satisfied when contract with state resident is the basis of the dispute).

Next, applying the second and third prongs of the three-part minimum contacts test, the court must decide whether Tulsa purposefully availed itself of the privilege of conducting activities within the forum state, such that it could reasonably anticipate being haled into a Georgia court. *Francosteel,* 19 F.3d at 627. When using a contract as the basis for personal jurisdiction, the Supreme Court has held that there is a "need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transac-

tion." *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174 (internal quotations omitted). As such, to determine if a defendant has purposefully availed itself of the privilege of conducting business in a state, the court must evaluate the contract negotiations, the contemplated future consequences of the relationship, the terms of the contract, and the parties' actual course of dealing. *Id.; see also Francosteel,* 19 F.3d at 627–28. Consideration of these facts will determine whether a defendant is subject to jurisdiction in a forum state.

In *Burger King Corporation v. Rudzewicz,* the Supreme Court found specific jurisdiction in Florida over a Michigan resident in a dispute arising out of breach of a franchise agreement. 471 U.S. at 462, 105 S.Ct. 2174. The Court based this finding on several important facts. First, the Court emphasized that the defendant had "deliberately reached out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization." *Id.* at 479–80, 105 S.Ct. 2174 (internal quotations omitted). Next, the Court found the fact that the defendant had no physical ties to Florida unpersuasive, instead focusing on the fact that the defendant had entered into a long-term, continuing, and structured relationship with a Florida corporation. *Id.* at 480, 105 S.Ct. 2174. Also, the Court noted that the defendant and the Florida corporation had carried on a continuous course of communications by mail and telephone. *Id.* at 481, 105 S.Ct. 2174. Finally, the Court found a choice of law provision in the franchise agreement persuasive when combined with these other facts, although this "alone would be insufficient to confer jurisdiction." *Id.* at 482, 105 S.Ct. 2174.

Like the Supreme Court in *Burger King,* this court finds that Tulsa had suffi-

cient contacts with the State of Georgia to warrant specific jurisdiction in this case. First, it is undisputed that Tulsa initiated contact with Paul Hastings. After three years of litigation, Tulsa realized it needed help defending itself and reached out to Paul Hastings. Tulsa sought out Paul Hastings based on the firm's reputation as a leader in employment defense work. Such contact was unsolicited by Paul Hastings and, like the defendant in *Burger King*, Tulsa deliberately "reach[ed] out beyond one state and create[d] continuing relationships and obligations with citizens of another state." *Id.* at 473, 105 S.Ct. 2174. Various decisions have relied heavily on the initiation of contact in finding a defendant subject to specific jurisdiction in Georgia. *Francosteel*, 19 F.3d at 628; *Complete Concepts, Ltd. v. Gen. Handbag Corp.*, 880 F.2d 382, 389 (11th Cir.1989); *Railcar*, 42 F.Supp.2d at 1374; *Allegiant Physicians Servs.*, 926 F.Supp. at 1114. Accordingly, this factor indicates specific jurisdiction in Georgia is proper.

Second, Tulsa directed Paul Hastings to hire contract attorneys and paralegals in an attempt at cost efficiency. Paul Hastings complied, and the firm hired various Atlanta residents to work in Paul Hastings' office on the Oklahoma litigation. These additional relationships with Georgia residents, initiated and approved by Tulsa, demonstrate further that Tulsa deliberately engaged in significant activities within Georgia. By creating continuing obligations between itself and residents of Georgia, Tulsa purposefully availed itself of the privilege of conducting business in the forum. *See Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174.

Additionally, the "contemplated future consequences" of the relationship between the parties indicate specific jurisdiction in Georgia is proper. *Id.* at 479, 105 S.Ct. 2174. Both Paul Hastings and Tulsa knew that significant amounts of work would be conducted at the Atlanta office of Paul Hastings. As attorneys themselves, the Tulsa officials responsible for hiring Paul Hastings were aware that legal research, writing, and preparation for litigation would primarily occur in Atlanta. In fact, Paul Hastings submits that ninety percent of the work done on the Oklahoma litigation took place in Atlanta. Although the trial was to occur in Oklahoma, the parties contemplated that significant amounts of work would be performed in Georgia prior to any trial. Thus, as in the contractual arrangement in *Burger King*, Tulsa entered a long-term, continuing, and structured relationship with a Georgia law firm. *Id.* at 480, 105 S.Ct. 2174. This lawsuit is a direct result of a contract which contemplated a substantial connection to Georgia. *Id.* at 479, 105 S.Ct. 2174.

Similar to the contemplated future consequences of the parties, the actual course of dealings between the parties proves that a continuous and extensive relationship was formed between the City of Tulsa and Paul Hastings. The relationship lasted nearly four years, from April 1998 until January 2002. During the course of the relationship, the City consistently contacted the Georgia attorneys with phone calls, e-mails, and letters. Moreover, payment was mailed to the Atlanta office, as were contract amendments, and the only complete set of litigation files was maintained at the Atlanta office of Paul Hastings. Finally, Tulsa officials visited the Georgia office on at least one occasion during the representation. Given these interactions, the actual course of dealings between Tulsa and Paul Hastings demonstrates that Tulsa's contacts with Georgia were not "random, fortuitous, or attenuated." *Id.* at 475, 105 S.Ct. 2174. Instead, Tulsa's contacts were deliberate and purposeful, satisfying the second and third prong of the three-part minimum contacts test. *Francosteel*, 19 F.3d at 627.

Therefore, because of the extensive relationship Tulsa initiated and maintained with Paul Hastings' Atlanta office, it is clear that Tulsa purposefully availed itself of the privilege of doing business in Georgia. Based on its contacts with the forum, Tulsa could reasonably expect to be haled into court in Georgia. By reaching out to and entering a contractual relationship with Georgia residents, Tulsa established the minimum contacts with the State of Georgia as required to exercise personal jurisdiction by the Due Process Clause of the United States Constitution.[1]

### 2. Fair Play and Substantial Justice

Once it has established that the nonresident defendant has the requisite minimum contacts with the forum state, the court must consider these contacts in light of other factors to determine whether the assertion of jurisdiction "would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. The other factors to be considered are: (1) the burden on the defendant in litigating the lawsuit; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies; and (5) the shared interest of the states in furthering fundamental social policies. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Peridyne Tech. Solutions*, 117 F.Supp.2d at 1370. Even where a nonresident defendant has sufficient minimum contacts with the forum, these factors may make the assertion of personal jurisdiction unreasonable in a particular case. *Robinson*, 74 F.3d at 259. But, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he [or she] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

In claiming that the traditional notions of fair play and substantial justice are lacking in this case, Tulsa argues that it would be a tremendous burden on Tulsa to have to litigate the suit in Georgia. Tulsa also argues that Georgia has little interest in the dispute. The court finds both arguments unpersuasive. Given the realities of the parties in this case, the location of the litigation will be inconvenient for one of them. Although the defendant will be compelled to travel to Georgia to defend

---

**1.** It is interesting to note that both the Third and Fourth Circuits found specific jurisdiction over nonresident defendants in nearly identical situations. *Remick v. Manfredy*, 238 F.3d 248 (3d Cir.2001); *English & Smith v. Metzger*, 901 F.2d 36 (4th Cir.1990). In *English and Smith*, Virginia co-counsel brought suit in Virginia against a California attorney for the California attorney's alleged breach of a legal fee-sharing agreement in connection with a civil forfeiture suit. 901 F.2d at 36–38. The original lawsuit was to be litigated in California, and the Virginia attorney had been brought on board by the California attorney for his expertise in forfeiture law. *Id.* Although the California attorney had never been to Virginia, the Virginia court had specific jurisdiction over the attorney because of the

California attorney's "purposeful direction of activities toward the forum." *Id.* at 39. Similarly, in *Remick v. Manfredy*, a Pennsylvania attorney sued a former client for breach of contract in Pennsylvania. 238 F.3d at 248–50. Although the client was a resident of Indiana, personal jurisdiction in Pennsylvania was appropriate because the client had solicited the Pennsylvania attorney, most of the work for the representation was completed in Pennsylvania, and the client frequently communicated with the attorney in Pennsylvania. *Id.* at 256. Thus, the Third and Fourth Circuits were willing to exercise personal jurisdiction over nonresident defendants who had purposefully established relationships with resident lawyers similar to the relationship between Paul Hastings and Tulsa.

this lawsuit, "modern improvements in transportation and communication significantly lessen this hardship." *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389 (11th Cir.1988); *see also Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 632 (11th Cir.1996). Further, Tulsa employees have traveled to Georgia on a number of occasions over the last seven years. Clearly, requiring Tulsa officials to travel to Atlanta is not inconvenience "so substantial as to achieve constitutional magnitude." *Burger King,* 471 U.S. at 484, 105 S.Ct. 2174.

More importantly, though, the court finds that Georgia has a significant interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174. In contrast to Tulsa's argument that Georgia is disinterested in this suit, the involvement of a law firm employing state residents means that Georgia is interested in the resolution of the dispute. Even if Oklahoma law applies to the situation, this court is capable of applying it while protecting the state's interest in providing residents a convenient forum for redressing injuries. *See, e.g., Williams Elec. Co.,* 854 F.2d at 393 (finding that the forum's interest in providing for resolution of resident disputes outweighs the travel burden on the defendants).

"When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the defendant." *Asahi Metal Indus. Co. v.Super. Ct. of Calif.,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Thus, given that Tulsa has the requisite minimum contacts with the State of Georgia to justify the exercise of specific jurisdiction over the City, Tulsa has failed to present the compelling case required by the Supreme Court to overcome these minimum contacts. *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. The court finds the exercise of jurisdiction over the City to comport with fair play and substantial justice. Therefore, Tulsa's motion to dismiss for lack of personal jurisdiction [Doc. No. 8–1] is hereby DENIED.

III. *Motion to Dismiss for Improper Venue*

■ Tulsa also moves to dismiss this cause of action for improper venue. According to Tulsa, there is an insufficient relationship between the City and the Northern District of Georgia to justify venue in this court. Paul Hastings contends that if this court has personal jurisdiction over Tulsa, this court is also a proper venue for the litigation.

■ According to section 1391(a)(2), a civil action founded on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2) (2002). In analyzing venue, the same contacts that support a finding of personal jurisdiction may be used to support a finding of venue. *Peridyne Tech. Solutions,* 117 F.Supp.2d at 1366; *CareKeeper Software Dev. Co. v. Silver,* 46 F.Supp.2d 1366 (N.D.Ga.1999) (Forrester, J.).

Here, a substantial part of the events giving rise to Paul Hastings' claim occurred in the Northern District of Georgia. As previously discussed, Tulsa hired Atlanta-based Paul Hastings attorneys to assist in a class action suit filed against it in Oklahoma. The vast majority of work for the litigation was performed in Atlanta, and Paul Hastings is seeking payment for this work. Further, Tulsa was in constant communication with the Atlanta attorneys during the course of the litigation, and even directed Paul Hastings to hire other

Atlanta-based contract attorneys and paralegals to save money. The only complete set of litigation files was maintained in Atlanta, and Tulsa sent payment and contract amendments to the Atlanta office. Thus, over the four years that Tulsa worked with Paul Hastings, a substantial part of the events giving rise to this breach of contract claim occurred in the Northern District of Georgia. Venue is proper in this court, and Tulsa's motion to dismiss for improper venue [Doc. No. 8–1] is hereby DENIED.

## IV. *Motion to Transfer Venue*

 As an alternative, Tulsa asserts that the court should transfer venue pursuant to section 1404(a). Tulsa claims the Northern District of Oklahoma is a far more convenient site for this lawsuit, and thus, the court should transfer venue. Paul Hastings counters that the Northern District of Oklahoma is not a substantially more convenient forum, and as such, the plaintiff's choice of forum should be granted deference.

 Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2002). In considering a motion to transfer venue under section 1404(a), the burden is on the moving party to establish the propriety of the transfer. *In re Ricoh Corp.*, 870 F.2d 570 (11th Cir.1989). Unless the balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed. *Robinson*, 74 F.3d at 260. Section 1404(a) directs the court to consider the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Bell v. K–Mart Corp.*, 848 F.Supp. 996 (N.D.Ga.1994) (Carnes, J.). Transfer should be denied if

it would merely shift inconvenience from one party to another. *Id.* at 998.

As for the convenience of the parties and witnesses, Tulsa has not shown that it would be substantially more convenient to litigate in Oklahoma. In this case, key witnesses are located in both Oklahoma and Georgia. The location of this litigation will be inconvenient for one party or the other. Although Tulsa argues that Paul Hastings' status as an international law firm makes it easier for its witnesses to travel to Oklahoma than for Tulsa officials to travel to Georgia, the facts demonstrate that Tulsa officials have frequently traveled to Georgia for business. In reality, both parties' witnesses are equally able to travel to other states. Given this equality, Tulsa has failed to show that the strong preference for the plaintiff's choice of forum should be overcome. *See, e.g., Robinson*, 74 F.3d at 260 (refusing to transfer venue where inconvenience would merely be shifted from the defendant to the plaintiff).

 Next, section 1404(a) directs the court to consider the "interest of justice." 28 U.S.C. § 1404(a) (2002). Tulsa argues that Oklahoma law will govern this dispute, and therefore, Oklahoma has a superior interest in this case. But, as previously discussed, Georgia has a significant interest in providing its residents with a forum for redressing injuries caused by out-of-state residents. Moreover, under the interest of justice analysis, the court is to consider factors such as access to evidence, availability of witnesses, and the cost of obtaining witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Again, in this case, these factors are evenly divided between Oklahoma and Georgia. Relevant evidence is located at the City Attorney's office in Tulsa, Oklahoma, and relevant evidence is located at Paul Hastings' office

in Atlanta, Georgia. Witnesses are located in both states. Based on this relative equality, the plaintiff's choice of forum should not be disturbed. *Robinson,* 74 F.3d at 260.

Therefore, transferring venue from this court to the Northern District of Oklahoma would simply shift the inconvenience from the plaintiff to the defendant. Tulsa has not fulfilled its burden in establishing the propriety of the transfer, and Paul Hastings' choice of forum will not be disturbed. The City of Tulsa's motion to transfer venue to the Northern District of Oklahoma [Doc. No. 8–2] is hereby DENIED.

### V. *Summary*

Based on the foregoing reasoning, the City of Tulsa's motion to dismiss for lack of personal jurisdiction [Doc. No. 8–1] is DENIED. The City of Tulsa's motion to dismiss for improper venue [Doc. No. 8–1] is DENIED, and the City of Tulsa's alternative motion to transfer venue [Doc. No. 8–2] is DENIED. The parties shall have 90 days from the entry of this order to take discovery in this matter. Motions for summary judgment shall be due 20 days after the close of discovery.