Gregory STAYART, Plaintiff-Appellant,

v.

Kelly HANCE, Defendant-Respondent.

Court of Appeals

*No. 2006AP1418. Submitted on briefs June 21, 2007.*
*—Decided August 1, 2007.*

2007 WI App 204

(Also reported in 740 N.W.2d 168.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Gregory Stayart,* pro se.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Murphy,* of *Murphy & Volbrecht,* S.C., of Elkhorn.

Before Brown, C.J., Anderson, P.J., and Nettesheim, J.

¶ 1. NETTESHEIM, J. Wisconsin resident and Illinois-licensed attorney Gregory Stayart appeals from an order dismissing for lack of personal jurisdiction his breach of contract action for unpaid legal fees against his former client, Tennessee resident Kelly Hance.

Stayart contends that WIS. STAT. § 801.05(5) (2005–06),[1] the long-arm statute, and due process principles support jurisdiction over Hance. Stayart also challenges the circuit court's comment that by maintaining his office in Wisconsin he is "engaging in illegal activities" because he was not licensed to practice law in Wisconsin. Based upon the manner in which the question of Stayart's licensure was raised and addressed in the trial court, we deem this factor relevant only on the question of whether Hance had sufficient contacts with Wisconsin. We conclude that sufficient minimum contacts exist and due process considerations support the exercise of long-arm jurisdiction over Hance. We therefore reverse and remand for further proceedings on Stayart's complaint.

## BACKGROUND

■

¶ 2.   On a motion to dismiss, we take the allegations in the complaint as true. *Aslakson v. Gallagher Bassett Servs.*, 2007 WI 39, ¶ 13, 300 Wis. 2d 92, 729 N.W.2d 712. Stayart's complaint states the following. Stayart is an Illinois attorney whose principal place of business is in Elkhorn, Wisconsin. He specializes in employment law and handles cases in state and federal courts. Hance, a Tennessee resident, contacted Stayart by telephone at Stayart's Wisconsin office about his termination from a railroad company. In July 2003, the two signed a written contract under which Stayart agreed to represent Hance in a wrongful discharge lawsuit against the railroad. The contract stated that Stayart's office is in Wisconsin.

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version.

¶ 3. In the ensuing litigation in the federal district court for the Eastern District of Tennessee, Stayart was admitted to practice *pro hac vice* for purposes of representing Hance. Working from his Wisconsin office, Stayart undertook numerous actions on Hance's behalf, such as filing suit in the federal district court, doing legal research, drafting legal documents, conducting settlement negotiations and preparing for trial. From Tennessee, Hance placed telephone calls to Stayart at Stayart's Wisconsin office and sent correspondence and payments to Stayart at that location. Stayart prepared Hance for and attended his Tennessee deposition by phone from Wisconsin. In February 2006, Hance discharged Stayart and hired Tennessee counsel for the still-pending case. Hance still owed Stayart about $51,400 in legal fees.

¶ 4. Proceeding pro se, Stayart filed this action against Hance in Walworth county circuit court seeking the unpaid fees. Hance moved to dismiss Stayart's complaint for lack of personal jurisdiction.[2] Hance contended his contacts with Wisconsin were insufficient because (1) he never has been to Wisconsin, (2) Stayart is an Illinois attorney admitted *pro hac vice*

---

[2] Hance also moved to dismiss Stayart's complaint for lack of subject matter jurisdiction. However, the matter was argued solely on the basis of the sufficiency of Hance's contacts under the law of personal jurisdiction. Although the circuit court's bench decision focused on those contacts and concluded that they were insufficient to confer personal jurisdiction, the court's concluding remark dismissed Stayart's complaint on the basis of a lack of both personal and subject matter jurisdiction. However, the court's written order refers only to a lack of personal jurisdiction. On appeal, the parties do not address any matters bearing on subject matter jurisdiction. Therefore, we limit this opinion to the personal jurisdiction issue.

in the Tennessee forum where the suit was filed and the litigation was to occur, (3) Hance signed the contract in Tennessee, (4) a contemplated malpractice counter-claim against Stayart in this action would require applying the Tennessee Rules of Professional Conduct, and (5) Hance could not reasonably have anticipated that he would be haled into a Wisconsin court.

¶ 5. In its bench ruling, the circuit court con-cluded that the exercise of jurisdiction over Hance offended due process because Hance's contacts with Wisconsin were "minimal and virtually nonexistent." The court also stated that personal jurisdiction was improper because Hance could not ratify Stayart's "illegal" practice of law in Wisconsin. The court recog-nized that Hance initiated the contact with Stayart, but since Hance "operat[ed] on the theory" that Stayart was an Illinois attorney, Stayart's residence does not elevate Wisconsin to a proper forum. Saying Wisconsin would be inconvenient for everyone but Stayart, the court dismissed the complaint. Stayart appeals.

## DISCUSSION

### Stayart's Licensure Status

¶ 6. We first address how Stayart's status as a Wisconsin resident practicing law from his office in Elkorn, Wisconsin as an Illinois-licensed attorney bears on the jurisdictional question before us. We conclude that the answer lies in how Stayart's licensure status factored into Hance's motion to dismiss and the circuit court's ruling.

¶ 7. In his motion to dismiss for lack of personal jurisdiction, Hance noted Stayart's status as a Wiscon-sin resident and an Illinois-licensed attorney. However,

Hance's motion did not seek dismissal of Stayart's complaint on the basis that Stayart lacked standing to enforce the contract or that the contract was otherwise invalid or unenforceable because Stayart was unlicensed in Wisconsin. The only fair reading of the motion is that Hance somehow believed that Stayart's licensure status had some bearing on the personal jurisdiction question before the circuit court.

¶ 8. Hance's argument at the hearing on his motion to dismiss bears this out. While Hance briefly alluded to Stayart's licensure in Illinois, this was offered in support of Hance's contention that he did not have sufficient contacts with Wisconsin. Nor did Hance's argument broaden his motion to contend that the contract should be voided on the grounds that Stayart was practicing law in Wisconsin without a license.

¶ 9. True, the circuit court made more of Stayart's licensure status in its bench decision than did Hance in his argument. But, like Hance's motion, the court's ultimate ruling was grounded in the law of personal jurisdiction, holding that Hance did not have sufficient contacts with Wisconsin. While the court was plainly troubled by Stayart's unlicensed status in Wisconsin, the court never ruled that Stayart lacked standing to enforce his claim or that the contract was unenforceable or void as against public policy or the licensing laws of Wisconsin. Instead, the court's final order states that Stayart's action was dismissed "for lack of personal jurisdiction over the defendant."

¶ 10. We therefore see Stayart's licensure status as irrelevant to the personal jurisdiction question before us, *except as it may bear upon the sufficiency of Hance's contacts with Wisconsin.* We now move to that question.

388

*Personal Jurisdiction*

¶ 11.   Stayart contends the circuit court erroneously concluded it could not exercise personal jurisdiction over Hance in this action. In reviewing questions of personal jurisdiction, we will not set aside the circuit court's findings of fact unless clearly erroneous. *State ex rel. N.R.Z. v. G.L.C.*, 152 Wis. 2d 97, 103, 447 N.W.2d 533 (1989). We review de novo, however, the court's ultimate legal conclusion as to the sufficiency of minimum contacts with the forum state. *Id.* Here, the facts regarding Hance's contact with Wisconsin are undisputed and are set out in Stayart's complaint and Hance's motion to dismiss.[3] Therefore, the question evolves into one of law as to the sufficiency of those contacts and, even if sufficient, whether the exercise of jurisdiction satisfies due process. *See Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662.

¶ 12.   Personal jurisdiction involves a two-step inquiry. *Id.* We first examine the nonresident defendant's contacts with Wisconsin to determine whether he or she is subject to jurisdiction under Wis. Stat. § 801.05, the long-arm statute. *Kopke*, 245 Wis. 2d 396, ¶ 8. If the statute extends to the defendant, we next examine whether the exercise of jurisdiction satisfies federal due process requirements. *Id.*

### 1.   Wisconsin's Long-Arm Statute

¶ 13.   Personal jurisdiction exists over a defendant in any action which "[a]rises out of . . . services actually

---

[3] The parties did not request, and trial court did not conduct, an evidentiary hearing on Hance's motion to dismiss.

performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant." WIS. STAT. § 801.05(5)(b). We construe the statute liberally in favor of jurisdiction, but the plaintiff bears the burden of establishing that jurisdiction exists. *Lincoln v. Seawright*, 104 Wis. 2d 4, 9, 310 N.W.2d 596 (1981).

¶ 14.　Stayart contends the long-arm statute provides a basis to confer personal jurisdiction over Hance because the action arises out of the numerous services he actually performed for Hance within Wisconsin and that Hance's transactions with his Wisconsin office by telephone and mail over the three years of their dealings, including making payments, demonstrate Hance's ratification of the arrangement.

■

¶ 15.　We agree. Hance does not dispute that Stayart performed the legal services at issue and that those services were provided on Hance's behalf in Wisconsin. Hance also does not dispute that the contract signals that Stayart's office is in Wisconsin, that the parties exchanged mail and telephone calls to and from Stayart's Wisconsin office, including payments sent by Hance to Stayart at that location. We view Stayart's state licensure as largely irrelevant to the long-arm analysis under these facts. While Hance may have understood, and correctly so, that Stayart is an Illinois-licensed attorney, his own actions over the three years of their relationship show that he also knew that he was engaged in transactions with a Wisconsin-based lawyer on a serious and important legal matter. The focus in a jurisdictional analysis is not on the plaintiff but on the contacts with Wisconsin of the "person served in an action," here, Hance. *See* WIS. STAT. § 801.05.

¶ 16.   We conclude that Stayart has met his burden of showing that he performed services in Wisconsin for Hance and that Hance authorized or ratified those actions. That satisfies WIS. STAT. § 801.05(5)(b). *See Regal Ware, Inc. v. TSCO Corp.*, 207 Wis. 2d 538, 543, 558 N.W.2d 679 (Ct. App. 1996).

### 2.   Due Process Requirements

¶ 17.   The second part of our inquiry is whether Wisconsin's exercise of jurisdiction comports with due process requirements. *Kopke*, 245 Wis. 2d 396, ¶ 8. We may presume that compliance with the long-arm statute is compliance with due process requirements. *Brown v. LaChance*, 165 Wis. 2d 52, 67, 477 N.W.2d 296 (Ct. App. 1991). However, a defendant may rebut the presumption by demonstrating that his or her contacts with Wisconsin were insufficient to justify suit here. *State ex rel. N.R.Z.*, 152 Wis. 2d at 105.

¶ 18.   The due process analysis presents two questions. *Kopke*, 245 Wis. 2d 396, ¶ 23. The first, on which Stayart carries the burden, is whether Hance purposefully established minimum contacts in Wisconsin. *See id.* If so, we next may consider those contacts in light of other factors to evaluate whether asserting personal jurisdiction comports with notions of "fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Hance carries the burden on this second level of the inquiry, and must present "a compelling case." *See Kopke*, 245 Wis. 2d 396, ¶ 23.

### a. Minimum Contacts

¶ 19. Stayart contends that sufficient contacts with Wisconsin exist because Hance solicited legal advice from, and representation by, a Wisconsin-based attorney, and the parties' written agreement created a continuing relationship with a Wisconsin resident. In addition, Stayart notes the substantial amount of legal work he performed in Wisconsin on Hance's behalf in the Tennessee litigation. The circuit court found that, since Hance never had been to Wisconsin and his contact consisted "primarily of some phone conversations . . . and some correspondence . . . strictly for the purpose of being in touch" with Stayart, the contacts were "minimal at best" and weighed against jurisdiction. We disagree.

¶ 20. The constitutional touchstone is whether a defendant purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). These contacts must show that the nonresident defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," such that the party could "reasonably anticipate being haled into court there." *Kopke*, 245 Wis. 2d 396, ¶ 24 (citations omitted). If the defendant's efforts are purposefully directed toward another state's resident, jurisdiction may not be avoided merely because he or she did not physically enter the forum state. *Burger King*, 471 U.S. at 476. "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines," making physical presence unnecessary. *Id.*

392

¶ 21. The association here began when Hance contacted Stayart at his Wisconsin office seeking his legal services. The July 2003 written agreement fleshes out further contacts the parties contemplated, and signals that Stayart's office is in Wisconsin. True, the parties never met in person, nor did either travel to the other's state. Nonetheless, Hance purposefully availed himself of the privilege of doing business in Wisconsin by initiating and agreeing in writing to a business relationship with Stayart, a Wisconsin resident, resulting in Stayart performing numerous legal services in Wisconsin on Hance's behalf. We disagree with the circuit court that the parties' mail and telephone contacts were simply to keep in touch. While that undoubtedly was part of the reason for the contacts, these exchanges were between an attorney and client involving a matter of obvious importance and consequence, particularly as to Hance. As noted by the Supreme Court in *Burger King*, these forms of communication are routine in today's modern commercial life, oftentimes making physical presence unnecessary. *Burger King*, 471 U.S. at 476. We conclude that Stayart has met his burden to show that Hance established minimum contacts in Wisconsin such that Hance reasonably could have anticipated being haled into court in Wisconsin.

¶ 22. Our conclusion finds support in several foreign cases Stayart cites which arose upon similar facts. In *Remick v. Manfredy*, 238 F.3d 248, 252, 254 (3rd Cir. 2001), for example, a Pennsylvania attorney sued his Indiana client for breach of contract. The Third Circuit Court of Appeals found that Pennsylvania had personal jurisdiction over Indiana resident Manfredy because he solicited Remick's legal services through a telephone call to Remick's Pennsylvania office; the call resulted in

393

a fee agreement Manfredy signed and returned to Remick's office; most of the services Remick provided were done through his Pennsylvania office and Manfredy sent at least one payment there. *Id.* at 256. There also were numerous "informational communications" with Remick at his Pennsylvania office, and "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Id.* (citation omitted). Since jurisdiction is proper where contracting parties "reach out beyond one state and create continuing relationships and obligations with citizens of another state," the court held that jurisdiction existed over Manfredy for Remick's breach of contract claim. *Id.* at 256–57 (quoting *Burger King*, 471 U.S. at 473; other citation omitted).

¶ 23. Similarly, in *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK*, 245 F. Supp. 2d 1248, 1251–52 (N.D. Ga. 2002), the city of Tulsa contracted with an Atlanta-based law firm to assist in a lawsuit filed against it in Oklahoma. Although the Atlanta attorneys traveled to Tulsa several times over the parties' four-year relationship and Tulsa officials visited Atlanta once, the law firm conducted most of the legal work out of its Atlanta office. *Id.* at 1252. The law firm sued for breach of contract when the city ceased payment. *Id.* The court said that to determine whether Tulsa purposefully availed itself of the privilege of conducting business in Georgia, it must evaluate the parties' contract negotiations, the contemplated future consequences of the relationship, the terms of the contract, and the parties' actual course of dealing. *Id.* at 1256. Relying heavily on *Burger King*, the court concluded that jurisdiction existed. *Id.* at 1256–57. It reasoned that Tulsa initiated contact with the law firm;

both parties contemplated that the work would be done primarily at the Atlanta office; Tulsa officials visited Atlanta; and the parties' actual course of dealings over their four-year relationship, including Tulsa's contact with the Atlanta firm by telephone, e-mail and letter and mailing payments there, demonstrated a "continuous and extensive relationship" such that Tulsa purposefully availed itself of the privilege of doing business in Georgia and reasonably could expect to be haled into court there. *Id.* at 1257–58.

¶ 24. For his part, Hance argues that we should consider his case through the prism of *Bushelman v. Bushelman*, 2001 WI App 124, 246 Wis. 2d 317, 629 N.W.2d 795. There, a woman filed for divorce in Wisconsin against her husband who lived in Arizona. *Id.*, ¶¶ 3–4. After the circuit court denied his motion to dismiss the action for lack of personal jurisdiction, the court of appeals reversed, concluding that the husband's frequent telephone calls and regular child support payments to his children in Wisconsin did not constitute "substantial and not isolated activities within this state" under Wis. Stat. § 801.05(1)(d) or satisfy the due process clause. *Bushelman*, 246 Wis. 2d 317, ¶¶ 1, 3.

¶ 25. The parallels Hance attempts to draw to *Bushelman* fall shy. First, three of Bushelman's four visits to Wisconsin occurred before the divorce was filed, while he still lived with his children. *Id.*, ¶ 31. We already have said that physical presence or absence in a forum state is not determinative. Second, a significant difference is that if Bushelman wanted to keep in touch with his children, he had few options but to telephone and write to them in Wisconsin where they lived with their mother. In a sense, therefore, his contacts with Wisconsin were nearly involuntary. Hance, by contrast,

of his own accord instigated contact with Stayart and negotiated an agreement in this state. *Bushelman* does not control.

¶ 26.   Based on the foregoing law, including the rationale of *Remick* and *Paul, Hastings, Janofsky & Walker*, we conclude that Stayart has met his burden of showing that by soliciting and agreeing to accept Stayart's services from his office in Wisconsin, Hance purposefully availed himself of the privilege of conducting business in Wisconsin and reasonably could expect to be haled into court here.

### b. Fair Play and Substantial Justice

¶ 27.   Inherent in the concept of fairness is that the defendant's relationship to the forum must be such that it is reasonable to require defense of the suit there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The circuit court and the parties applied the due process test adopted in *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 64–65, 179 N.W.2d 872 (1970), which analyzes quantity of contacts; nature and quality of contacts; source of the cause of action; Wisconsin's interest in the action; and convenience to the parties.

¶ 28.   Our supreme court set aside the *Zerbel* test, however, in favor of one the United States Supreme Court developed which encompasses the *Zerbel* factors. *Kopke*, 245 Wis. 2d 396, ¶ 23 n.9. Under the new test, five factors help determine if personal jurisdiction is reasonable:   (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the judicial system's interest in efficiency, and (5) the shared interest of the states in furthering substantive social policies. *Asahi Metal In-*

*dus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987); *see also Kopke*, 245 Wis. 2d 396, ¶ 39.

¶ 29. As for the first factor, Hance contends that permitting the suit to go forward in Wisconsin would be "extremely costly" and "extremely inconvenient" for him due to his anticipated malpractice counterclaim against Stayart. But inconvenience does not necessarily mean that a party's due process rights are violated. *Tammie J.C. v. Robert T.R.*, 2003 WI 61, ¶ 53, 262 Wis. 2d 217, 663 N.W.2d 734. After all, it was Hance who engaged Stayart, an out-of-state attorney, and who laid down substantial Wisconsin contacts by doing so. This factor favors jurisdiction.

¶ 30. Second, Wisconsin has an unquestionable interest in providing its citizenry with a convenient forum for redressing injuries arising here and inflicted by out-of-state actors. *See Koepke*, 245 Wis. 2d 396, ¶ 40; *see also Milwaukee County v. Hartford Cas. Co.*, 151 Wis. 2d 463, 474 n.6, 444 N.W.2d 455 (Ct. App. 1989) (quoting *Burger King*, 471 U.S. at 473)). Stayart is a Wisconsin resident whether or not licensed to practice law here. This factor also weighs in favor of jurisdiction.

¶ 31. Stayart, too, has an interest in obtaining convenient and effective relief for the over $50,000 he claims is owed him. Hance might have retained local counsel at the outset, as he since has, but instead sought out Stayart in Wisconsin. Stayart's office and records are here. This third factor also weighs in favor jurisdiction.

¶ 32. We do not see the fourth and fifth factors, which examine the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies, as

helpful, informative or integral to the dispute here. *See Kopke*, 245 Wis. 2d 396, ¶ 39 (limiting analysis to the three relevant factors before affirming circuit court's finding of personal jurisdiction). Based on our consideration of the first three factors, we conclude that Hance has not made a compelling case that exercising jurisdiction offends due process. *See id.*, ¶ 23.

¶ 33. We conclude with a final observation that does not affect the merits of this case. Stayart devotes the first half-dozen pages of his argument to a claimed due process violation, suggesting he was blindsided by the circuit court's ruling that he engaged in the unauthorized practice of law. Stayart contends he had no notice of this charge because Hance never raised it by motion or at the motion hearing. To the contrary, and as we have already noted, Hance's motion to dismiss noted Stayart's status as an Illinois-licensed attorney who practiced law from a location in Wisconsin. Hance similarly argued at the motion hearing that Stayart "is not a Wisconsin lawyer and yet in the documents and pleadings he represents that he has a law office in Wisconsin." Indeed, Stayart's own Response to the Motion to Dismiss maintains that he is "not engaging in the unauthorized practice of law." Although we rule for Stayart on the merits, his indignation at being caught off-guard regarding this subject does not ring true.

## CONCLUSION

¶ 34. We conclude that the long-arm statute extends to Hance. Hance solicited Stayart's representation. For the next three years, Stayart performed legal services in this state on Hance's behalf and with his knowledge and authorization pursuant to the parties'

written agreement. Hance may not now use due process to avoid obligations he voluntarily assumed, especially since the realities of modern commercial life ease the burden of defending himself. *See Burger King*, 471 U.S. at 474. We reverse the order dismissing Stayart's complaint. We remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.