Eric D. CARLSON, Plaintiff-Appellant,

v.

FIDELITY MOTOR GROUP, LLC,
Defendant-Respondent.

Court of Appeals

*No. 2014AP695. Submitted on briefs October 20, 2014.
—Decided January 14, 2015.*

2015 WI App 16

(Also reported in 860 N.W.2d 299.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Eric D. Carlson, Esq.*, Mequon.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael S. Kenitz* of *Kenitz Law Office LLC*, Hartford.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J. Eric Carlson appeals from an order of the circuit court dismissing his lawsuit against Fidelity Motor Group, LLC, related to his purchase of a 2006 BMW automobile from Fidelity. He contends the court erred in concluding it did not have personal jurisdiction over Fidelity, arguing that Fidelity's "advertisements on third party web sites and phone conversation with [him] meet the minimum contacts requirement" that must be satisfied for Wisconsin courts to have personal jurisdiction. We conclude that such advertisements and conversation did not meet the minimum contacts requirement and therefore are insufficient to establish jurisdiction. We affirm.

## Background

¶ 2. Carlson commenced this lawsuit in Ozaukee County, Wisconsin, alleging "fraud by wire" and "negligent representation" by Fidelity related to his purchase of the BMW. Fidelity moved the circuit court for

371

dismissal for lack of personal jurisdiction. Each party submitted an affidavit. Exhibits submitted with Carlson's affidavit include "screenshots" of Fidelity's own website and its advertisements on fourteen other websites, including "cars.com," and a copy of a portion of a cell phone bill showing phone calls made on March 16, 2013.

¶ 3. The relevant, undisputed allegations from Carlson's complaint and facts as averred in his affidavit and exhibits in opposition to Fidelity's motion to dismiss are as follows. Carlson is a resident of Wisconsin and Fidelity is an automobile dealership located in Illinois. On March 16, 2013, Carlson observed on his wife's cell phone a Fidelity advertisement for the BMW on the cars.com website. He called Fidelity's toll-free number listed on the website and spoke with a Fidelity representative for approximately four minutes, during which time the representative told Carlson the vehicle was in excellent condition with no known mechanical problems. The representative called Carlson back two hours later and spoke with him for approximately one minute regarding the vehicle.[1] Carlson and his wife traveled to Fidelity that same day. Carlson test drove

---

[1] Carlson asserts in both his brief-in-chief and reply brief, as he asserted in his brief to the circuit court, that a Fidelity representative called him back on the cell phone. Neither the complaint nor Carlson's affidavit explicitly state that a Fidelity representative called Carlson back. In Carlson's affidavit, however, he references a "first telephone conversation" with a Fidelity representative on March 16, 2013, and an exhibit accompanying the affidavit shows a four-minute call from the cell phone to a toll-free number of Fidelity and two hours later a one-minute call from another Fidelity toll-free number *to* the cell phone. Fidelity does not dispute that a Fidelity representative called Carlson back approximately two hours after Carlson first called Fidelity.

the BMW and discussed the price with the representative. Both he and his wife requested that Fidelity change the oil at the time of purchase and the representative agreed Fidelity would do that. Fidelity took the vehicle to its service center and the representative indicated to Carlson that the oil had been changed. Carlson purchased the BMW.

¶ 4. Five months later, Carlson experienced problems with and sustained damage to the BMW in Wisconsin, damage which he asserts was caused by the oil not having been changed at the time of purchase as had been represented to him. According to a mechanic who examined the BMW, the oil had not been changed for "tens of thousands of miles."

¶ 5. Fidelity's affidavit, by its executive vice president, provides the following relevant, undisputed facts. Fidelity is an Illinois limited liability company and has a single facility, located in Illinois, from which it sells motor vehicles. Fidelity has never

> owned, used, maintained and had any office or other facility in Wisconsin; . . . employed any persons to perform any services or deliver any materials in Wisconsin; . . . advertised or purchased any advertisement or solicitation within Wisconsin (except to the extent that [Fidelity's] website is accessible to Wisconsin residents); . . . directed any mail or other solicitation to any Wisconsin residents; . . . filed suit in any Wisconsin court; . . . excepting this case, never been a Defendant in any case in the Wisconsin courts; . . . performed any contract within Wisconsin; . . . owned, leased or held any interest in any personal property or real estate in Wisconsin[; or] engaged in any business in Wisconsin.

With regard to Carlson's purchase of the BMW, the vice president averred:

[T]he contract for sale was entered into in Illinois . . .; delivery of the vehicle was made in Illinois; the Plaintiff and Defendant met at [Fidelity's] facility in Illinois to discuss the sale of the vehicle, sign the contract and make delivery; [and] any and all pre-sale inspections, repair and maintenance of the vehicle was performed in Illinois . . . .

¶ 6. The circuit court granted Fidelity's motion to dismiss after a hearing and Carlson appeals.[2]

### *Discussion*

■

¶ 7. Whether a court has personal jurisdiction over an out-of-state defendant is a question of law we review de novo. *Johnson Litho Graphics of Eau Claire, Ltd. v. Sarver,* 2012 WI App 107, ¶ 6, 344 Wis. 2d 374, 824 N.W.2d 127.

■■

¶ 8. On a question of personal jurisdiction over an out-of-state defendant, the plaintiff bears "the minimal burden of establishing a prima facie threshold showing" that the requirements of both constitutional

---

[2] Fidelity moved for dismissal solely on the ground of lack of personal jurisdiction, and the parties' written and oral arguments before the circuit court and the circuit court's comments at oral argument addressed only that issue. In its oral ruling, however, the court, we assume mistakenly, stated it was dismissing the case due to a lack of *subject matter* jurisdiction. In its written order following its oral ruling, the court stated that it was dismissing the case based on a lack of personal jurisdiction. Apparently following the court's oral pronouncement, Carlson indicates in his notice of appeal that he is appealing the court's decision to dismiss the action based on a lack of subject matter jurisdiction. In their briefs on appeal, the parties focus only on the issue of personal jurisdiction, and that is the issue we address.

due process and Wisconsin's long-arm statute, WIS. STAT. § 801.05 (2011–12),[3] are satisfied. *Kopke v. A. Hartrodt S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662 (citation omitted). In reviewing whether this burden has been met, "we may consider documentary evidence and weigh affidavits." *Id.* We accept as true all well-pleaded allegations in the complaint, unless controverted by affidavits of the challenging party. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "Factual doubts are to be resolved in favor of the plaintiff," *Kopke*, 245 Wis. 2d 396, ¶ 8 (citation omitted); however, we must keep in mind that the "focus in a jurisdictional analysis is not on the plaintiff but on the [defendant's] contacts with Wisconsin," *Stayart v. Hance*, 2007 WI App 204, ¶ 15, 305 Wis. 2d 380, 740 N.W.2d 168.

¶ 9. Before proceeding to the due process question, courts generally begin the jurisdictional analysis by determining if the requirements of the long-arm statute are satisfied. *See Kopke*, 245 Wis. 2d 396, ¶ 8. Where, as here, however, it is clear the due process minimum contacts requirement is not satisfied, we may proceed directly to this issue. *See Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 297 F. Supp. 2d 1154, 1157 (W.D. Wis. 2004) (if due process requirements are not met, need not decide if WIS. STAT. § 801.05 is satisfied).

██ ██

¶ 10. The due process question presents two considerations. First, we must determine whether the defendant "purposefully established minimum contacts in the forum State." *Kopke*, 245 Wis. 2d 396, ¶ 23

---

[3] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

(citation omitted). The plaintiff carries the burden on this inquiry. *Id.* If this question is answered in the affirmative, we then consider whether the assertion of personal jurisdiction comports with "fair play and substantial justice." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). On this consideration, the defendant bears the burden. *Id.* Here, we need not wrestle with the latter issue as we conclude Fidelity did not "purposefully establish[] minimum contacts" in Wisconsin.

¶ 11. Carlson asks us to determine that Fidelity's "advertisements on third party web sites and phone conversation with [him] meet the minimum contacts requirement." He directs us to our supreme court's decision in *Kopke* as support for his position that due process considerations permit Wisconsin courts to exercise personal jurisdiction over Fidelity. In discussing the due process question, the *Kopke* court stated:

> Under the Due Process Clause, personal jurisdiction over a nonresident defendant is proper when the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Minimum contacts requires that " 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' " Essential to each case is " 'that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " The "purposeful availment" requirement has become the "baseline," the primary focus, of the minimum contacts analysis. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely

as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.' "

*Id.*, ¶ 24 (alteration in original) (citations omitted).

¶ 12. In *Kopke*, the plaintiff truck driver was injured when he opened a cargo container in Neenah, Wisconsin, and a pallet loaded with paper fell on him. *Id.*, ¶ 2. Workers for an Italian cooperative had placed the pallet of paper into the cargo container prior to its shipping from Italy to Neenah. *Id.*, ¶¶ 2, 4, 6. The truck driver sued the cooperative, among others, which moved to dismiss for lack of personal jurisdiction. *Id.*, ¶ 7.

¶ 13. Although the *Kopke* court ultimately did conclude the circuit court had personal jurisdiction over the cooperative, *see id.*, ¶ 48, the case is of no help to Carlson. Correctly noting the facts in *Kopke*, Carlson himself explains in his brief-in-chief that the *Kopke* court held that Wisconsin had jurisdiction over the cooperative "because the facts showed there was 'a regular course of dealing that result[ed] in deliveries' of multiple units of the product into [the] forum over a period of years." Brief for Appellant at 26 (quoting *Kopke*, 245 Wis. 2d 396, ¶ 31). "Specifically," Carlson further writes, "the records showed that between November 8, 1996 and May 20, 1997, 'at least 40 containers were loaded by [defendant's] workers for delivery in this forum.' " *Id.* (quoting *Kopke*, 245 Wis. 2d 396, ¶ 35). Putting the nail into his own coffin with regard to the inapplicability of *Kopke* to this case, Carlson adds that "[t]he [*Kopke*] court also emphasized that this was not a 'one-time transaction.' " *Id.* at 27 (quoting *Kopke*, 245 Wis. 2d 396, ¶ 46).

¶ 14. In stark contrast to the facts in *Kopke*, here the record only shows that Fidelity made this "one-time transaction"—the sale of the BMW—with a Wisconsin resident, Carlson. This is a far cry from " 'a regular course of dealing that result[ed] in deliveries' of multiple units of the product into [the] forum over a period of years," *id.*, ¶ 31 (citation omitted), and highlights how inappropriate it would be for the Wisconsin courts to exercise jurisdiction over Fidelity based upon the record before us. *See also Johnson Litho*, 344 Wis. 2d 374, ¶ 24 (out-of-state defendant's extensive business contacts with a Wisconsin company "cross[ed] the threshold from offending due process to sufficient minimum contacts," with the court emphasizing "[t]his was not a one or two time business relationship" (first alteration in original) (citation omitted)); *cf. Hy Cite*, 297 F. Supp. 2d at 1162 (stating it "cannot seriously [be] argue[d] that *one* sale is a sufficient ground to hale defendant into a Wisconsin court for any suit").

¶ 15. Carlson contends Fidelity's use of Internet websites to sell its vehicles supports his position that Wisconsin courts may exercise personal jurisdiction over Fidelity. Neither party has directed us to Wisconsin Supreme Court case law on the effect of Internet websites on the question of personal jurisdiction over out-of-state defendants, and our review has uncovered no helpful cases. We gain guidance, however, from a case out of the United States District Court for the Western District of Wisconsin, *Hy Cite*.[4]

---

[4] Carlson refers us to a federal district court decision out of Pennsylvania, *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), which discusses a sliding scale test for determining the impact of a defendant's website upon the personal jurisdiction question. *See id.* at 1124. We conclude, however, that *Hy Cite Corp. v. badbusinessbureau*

¶ 16. The plaintiff in *Hy Cite* was a Wisconsin corporation and the defendant was a West Indies company that owned and operated a website that displayed consumer complaints against businesses. *Hy Cite*, 297 F. Supp. 2d at 1156. Of 61,000 consumer complaints submitted to the defendant, thirty to forty were about the plaintiff. *Id.* The defendant also allowed businesses to purchase ad space on the website, although no

.com, *L.L.C.*, 297 F. Supp. 2d 1154 (W.D. Wis. 2004)—which rejected the *Zippo* test as a substitute for the minimum contacts inquiry—provides a better approach by not looking to a separate test where Internet websites are involved, but rather simply considering such websites as a part of the overall due process question of "whether the defendant's contacts with the state are of such a quality and nature such that it could reasonably expect to be haled into the courts of the forum state." *See Hy Cite*, 297 F. Supp. 2d at 1161. As the *Hy Cite* court further observed: "The Supreme Court has never held that courts should apply different standards for personal jurisdiction depending on the type of contact involved. To the contrary, the Court 'long ago rejected the notion that personal jurisdiction might turn on "mechanical" tests.' " *Id.* at 1160 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). The *Hy Cite* court added: "The purpose of the 'minimum contacts' test set forth in *International Shoe* [*Co. v. Washington*, 326 U.S. 310 (1945),] was to create a standard flexible enough that specialized tests were not needed." *Hy Cite*, 297 F. Supp. 2d at 1160.

We also find persuasive the observation of another federal court that declined to follow the *Zippo* analysis:

> [T]his court observes that the need for a special Internet-focused test for "minimum contacts" has yet to be established. It seems to this court that the ultimate question can still as readily be answered by determining whether the defendant did, or did not, have sufficient "minimum contacts" in the forum state. The manner of establishing or maintaining those contacts, and the technological mechanisms used in so doing, are mere accessories to the central inquiry.

*Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 750 (E.D. Mich. 2000).

Wisconsin company had done so, and displayed a link for purchasing a book and solicited donations for itself on the website. *Id.* at 1156–57. One Wisconsin resident had purchased a book, but the defendant could not recall whether it had received any donations from Wisconsin. *Id.* at 1157.

¶ 17. The plaintiff e-mailed the defendant about ways to resolve the complaints posted on the website about the plaintiff, and the defendant responded with an e-mail informing the plaintiff of its "Corporate Consumer Advocacy Program" that was advertised on the website and in which the plaintiff could pay to enroll. *Id.* at 1156. The parties also communicated regarding this program via phone. *Id.* at 1163. The plaintiff did not enroll, nor had any other Wisconsin company enrolled, in the program. *Id.* at 1156. Instead, the plaintiff sued the defendant and the defendant moved to dismiss based on a lack of personal jurisdiction. *Id.*

¶ 18. In addressing whether personal jurisdiction over the defendant comported with due process, the *Hy Cite* court stated that

> a finding that a defendant uses its website to engage in repeated commercial transactions may support the exercise of personal jurisdiction, *so long as there is a corresponding finding that the defendant is expressly targeting residents of the forum state and not just making itself accessible to everyone regardless of location.*

*Id.* at 1161 (emphasis added); *accord be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (concluding that use of out-of-state defendant's website by twenty Illinois residents did not suffice to establish personal jurisdiction over the defendant by the Illinois courts, with the court noting "[t]here is no evidence that [the defendant]

targeted or exploited the market in the state that would allow a conclusion that he availed himself of the privilege of doing business in the state"). Like our supreme court in *Kopke*, the *Hy Cite* court recognized that the ultimate question is "whether the defendant's contacts with the state are of such a quality and nature such that it could reasonably expect to be haled into the courts of the forum state." *Hy Cite*, 297 F. Supp. 2d at 1161; *see also Kopke*, 245 Wis. 2d 396, ¶ 24.

¶ 19. The *Hy Cite* court concluded that the defendant did not have sufficient contact with Wisconsin for the court to exercise personal jurisdiction over the defendant. *Hy Cite*, 297 F. Supp. 2d at 1163, 1167. The court observed that

> [w]ith the exception of the book sale to one Wisconsin resident and the communication between the parties, all of the activities identified by plaintiff consist of nothing more than *potential* contacts. Further, although plaintiff characterizes defendant's internet-based activities as "soliciting" Wisconsin business, plaintiff has not alleged that defendant has done anything to target internet users in Wisconsin.

*Id.* at 1161. The court noted that the defendant did not "send mailings or unsolicited e-mails to the state" or "advertise for its [website] within Wisconsin," and pointed out that "the defendant does not control who views [the website] or responds to it." *Id.* at 1164. The court continued: "The closest plaintiff comes to a showing of solicitation is defendant's exchanges with plaintiff about the Corporate Consumer Advocacy Program. However, it is undisputed that it was plaintiff who contacted defendant without any prompting on the part of defendant." *Id.* The *Hy Cite* court acknowledged that the defendant had had contact with multiple Wisconsin citizens who had posted complaints on

381

the defendant's website, but emphasized that the defendant "has not targeted Wisconsin citizens more than the citizens of any other state." *Id.*

¶ 20. We note even greater similarities between the case before us and *Marschke v. Wratislaw*, 743 N.W.2d 402 (S.D. 2007), in which the Supreme Court of South Dakota concluded that personal jurisdiction did not comport with due process where an automobile sale was prompted by an Internet advertisement. *Id.* at 404, 407, 411. In that case, the defendant, who resided in Montana and was licensed there to sell used cars, advertised a 1971 Fiat on the Internet auction site eBay. *Id.* at 404. The defendant's business website and toll-free telephone number were displayed on the auction webpage for the Fiat. *Id.* The plaintiff found the vehicle while searching the auction website, but instead of bidding on it, called the defendant's toll-free number to discuss the vehicle.[5] *Id.*

¶ 21. The plaintiff spoke with the defendant by phone on at least two occasions, arranging the sale terms. *Id.* The defendant e-mailed the plaintiff to obtain his full name and mailing address, and subsequently mailed the unsigned purchase agreement to the plaintiff, which the plaintiff signed in South Dakota and mailed back to the defendant. *Id.* at 408–10. The defendant executed the agreement at his Montana office. *Id.* The plaintiff wire-transferred payment for the vehicle to the defendant. *Id.* The defendant then referred the plaintiff to a motor carrier, with whom the plaintiff arranged for transportation of the vehicle. *Id.*

---

[5] In his affidavit on the defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff averred that during this initial phone call he informed the defendant that he was from South Dakota. *Marschke v. Wratislaw*, 743 N.W.2d 402, 404 n.2 (S.D. 2007).

When the vehicle reached the plaintiff in South Dakota, the plaintiff determined it was not in acceptable condition and commenced the lawsuit. *Id.* at 404–05. The defendant moved to dismiss for lack of personal jurisdiction, and the circuit court granted the motion. *Id.* at 405.

¶ 22. On appeal to the supreme court, the plaintiff argued that the defendant's use of the Internet to sell the vehicle, the communications that occurred between the plaintiff and the defendant, the defendant's mailing of the unsigned contract to South Dakota for the plaintiff's signature, and the manner in which payment was made to the defendant constituted sufficient minimum contacts with South Dakota to establish personal jurisdiction. *Id.* at 405, 408. The court disagreed. *Id.* at 411.

¶ 23. The court recognized that the defendant posted the vehicle for sale on eBay, along with a toll-free telephone number and a link to his business website, and that the defendant had acknowledged in his affidavit that he occasionally posted other cars for sale on eBay. *Id.* at 408 & n.7. The court stated, however, that because the plaintiff did not buy the vehicle through eBay, the defendant's "use of eBay in this case constitute[d] no more than an extension, via Web link, of his own advertisement Website." *Id.* at 408. The court concluded that "any contact created through the use of the Internet as an *advertising* medium [was] attenuated." *Id.* The court then addressed the contract between the parties, noting that "the United States Supreme Court has held that a contract with a nonresident party is not alone sufficient to establish minimum contacts." *Id.* at 409 (citing *Burger King Corp.*, 471 U.S. at 478). The court continued, "[t]hus . . . we must determine if the sum total of the rest of [the

defendant's] acts when added to the contract constitute sufficient minimum contacts." *Id.*

¶ 24. The court observed that there was no long-term relationship between the plaintiff and the defendant, and further added:

> [T]he sum total of [the defendant's] transactions in South Dakota could be characterized as a "one shot deal"—the sale to [the plaintiff]. Therefore, that [the defendant] had no physical contact with South Dakota before, during or after the period relevant to the sale of the [vehicle], is a factor that we consider. In the context of this "one shot deal," we also find it pertinent that [the plaintiff] initiated the telephone calls and negotiations leading to the . . . purchase with [the defendant]. That [the defendant] sent a solitary e-mail into Cyberspace to obtain [the plaintiff's] contact information so that the unsigned contract could be mailed to him in South Dakota does not constitute a significant contact among these facts.

*Id.* at 410. The court continued:

> [The defendant] was not incorporated, headquartered or licensed to do business in South Dakota. Neither did he maintain an office or employees in South Dakota. He did not own real estate or maintain bank accounts here. He did not manufacture, distribute or sell products within the state, and in this case neither did he make delivery of any sale item to South Dakota. In short, [the defendant] had no presence in South Dakota and his only connection with the state was through one isolated sale of a [vehicle] to [the plaintiff].

*Id.* at 410–11 (citations and footnote omitted). The court concluded that the defendant's contacts with South Dakota were insufficient for jurisdiction. *Id.*; *accord Riverside Exports, Inc. v. B.R. Crane & Equip., LLC,* 362 S.W.3d 649 (Tex. App. 2011) (rejecting similar

arguments relating to minimum contacts, Internet presence, and contact through e-mails/phone calls and concluding it had no personal jurisdiction); *see also Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 749 (E.D. Mich. 2000) (defendant who sold items via eBay to Michigan residents on two occasions, but did not target the state, did not purposefully avail herself of the privilege of doing business there; rather, such sales constituted "random" and "attenuated" contact).[6]

¶ 25. We turn now to the case before us. Consistent with the *Hy Cite* court's observation in that case, Fidelity's advertisements on its own website, cars.com, or other third-party sites represent merely *potential* contacts with the state of Wisconsin. *See Hy Cite*, 297 F. Supp. 2d at 1161. Significantly, Carlson has neither alleged nor shown facts suggesting Fidelity targeted Wisconsin residents with its Internet advertisements any more than any other state's residents; instead, the advertisements were "accessible to everyone regardless of location." *See id.*; *see also Reno v. American Civil Liberties Union*, 521 U.S. 844, 851 (1997) (observing that "cyberspace" may be accessed by anyone, located

---

[6] Wisconsin courts could have either general or specific personal jurisdiction over an out-of-state defendant. *See generally Rasmussen v. General Motors Corp.*, 2011 WI 52, 335 Wis. 2d 1, 803 N.W.2d 623. The court in *Hy Cite* concluded that the defendant did not have sufficient contact with Wisconsin for the court to exercise either general or specific jurisdiction. *Hy Cite*, 297 F. Supp. 2d at 1161–67. In *Marschke*, the court specifically addressed the issue of specific jurisdiction. *Marschke*, 743 N.W.2d at 406. Carlson fails to specify whether his arguments are based on general or specific jurisdiction. Here, the facts fail to provide a basis for the exercise of either. For a discussion of the difference between general and specific jurisdiction in Wisconsin, *see Rasmussen*.

anywhere, who has an Internet connection). There is no evidence suggesting Fidelity sent unsolicited communications into Wisconsin or advertised for any of the relevant websites within Wisconsin. *See Hy Cite*, 297 F. Supp. 2d at 1164. Moreover, Fidelity does not control who views or responds to its own website or those of third parties. *See id.*; *Riverside*, 362 S.W.3d at 654. Further, the two phone calls between Carlson and Fidelity—one from and one to Carlson's wife's cell phone—do not constitute significant contact by Fidelity with Wisconsin, as they amounted to no more than five minutes of conversation and were initiated by Carlson. *See Hy Cite*, 297 F. Supp. 2d at 1164; *Marschke*, 743 N.W.2d at 410; *see also Johnson Litho*, 344 Wis. 2d 374, ¶¶ 21, 28 (which party initiates contact for a business relationship is relevant in determining whether sufficient minimum contacts with the forum state have been established).

¶ 26. Carlson has neither alleged nor presented any evidence indicating Fidelity has ever sold a vehicle to anyone else from Wisconsin, or even that it has ever had any contact with a Wisconsin business or resident other than Carlson (and his wife). Again, based on the record before us, this was a "one shot deal," a one-time sale to a Wisconsin resident, Carlson, with no ongoing, much less long-term, relationship between the parties. *See Marschke*, 743 N.W.2d at 410.

¶ 27. Contrasted against this nearly nonexistent record of "contact" with Wisconsin are Fidelity's undisputed averments that it has never

> owned, used, maintained and had any office or other facility in Wisconsin; . . . employed any person to perform any services or deliver any materials in Wisconsin; . . . advertised or purchased any advertisement or solicitation within Wisconsin (except to the extent that

> [Fidelity's] website is accessible to Wisconsin residents); . . . directed any mail or other solicitation to any Wisconsin residents; . . . filed suit in any Wisconsin court; . . . excepting this case, never been a Defendant in any case in the Wisconsin courts; . . . performed any contract within Wisconsin; . . . owned, leased or held any interest in any personal property or real estate in Wisconsin[; or] engaged in any business in Wisconsin.

And

> the contract for sale was entered into in Illinois . . .; delivery of the vehicle was made in Illinois; the Plaintiff and Defendant met at [Fidelity's] facility in Illinois to discuss the sale of the vehicle, sign the contract and make delivery; [and] any and all pre-sale inspections, repair and maintenance of the vehicle was performed in Illinois . . . .

¶ 28. Based on this record, we cannot conclude that Fidelity "purposefully avail[ed] itself of the privilege of conducting activities" within Wisconsin and "thus invok[ed] the benefits and protections of its laws," or that Fidelity's "conduct and connection" with Wisconsin was such that it should have "reasonably anticipate[d] being haled into court [here]." *See Kopke*, 245 Wis. 2d 396, ¶ 24 (citations omitted). Fidelity's connection to Wisconsin was no more than "random," "fortuitous," and "attenuated." *Id.* (citation omitted). Fidelity did not "purposefully establish[] minimum contacts" in Wisconsin so as to permit the circuit court to exercise personal jurisdiction over it. *Id.*, ¶ 23 (citation omitted).

*By the Court.*—Order affirmed.